SOUTHERN DISTRICT OF MISSISSIPPI
FILED

APR 27 2017

ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

JASON BROOKINS,                        )
                                       )
     Plaintiffs,                       )
                                       )
     v.                                )      Civil Action No. 2:17 CV 60-KSMTP
LAWRENCE COUNTY SCHOOL                 )
DISTRICT; TAMMY FAIRBURN, in           )      JURY TRIAL DEMANDED
both her official and individual       )
capacity; DARRYL TURNER, in both       )
his individual and official capacity and )
JOHN DOES (1-10)                       )
                                       )
     Defendants.                       )

## COMPLAINT

COMES NOW, the Plaintiff, Jason Brookins, by and through his undersigned

counsel, and files this, his Complaint against the Defendants, Lawrence County

School District; Tammy Fairburn, in both her official and individual capacities;

Darryl Turner, in both his individual and official capacities; and John Does (1-10).

In support of his Complaint, Plaintiff would show unto the Honorable Court

afollows:

### THE PARTIES

1.     Plaintiff, Jason Brookins, is a citizen of Sontag, Mississippi.

2.     Defendant, Lawrence County School District (the "District" or "LCSD"),

is a political subdivision of the State of Mississippi acting under color of state law in

Lawrence County, Mississippi. The District's governing body is the District's School Board ("Board" or "LCSB").

3.      Defendant Tammy Fairburn is the Superintendent of the District, and upon information and belief, is a citizen of Monticello, in Lawrence County, Mississippi.

4.      Defendant Darryl Turner is the Principal of Lawrence County High School, and upon information and belief, is a citizen of Monticello, in Lawrence County Mississippi.

5.      Defendant John Does (1-10) are individuals, agents, or co-conspirators who engaged in prohibited conduct described in this Complaint.

## VENUE AND JURISDICTION

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § § 1331, 1343, for the violation of Plaintiff's federal statutory rights and for violation of Plaintiff's civil rights under 42 U.S.C. § 1983. At all relevant times, Defendants acted under color of state law. Defendant, the District, is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964. This action is also brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000, *et seq.*, 42 U.S.C. §§ 1981 & 1983, and the equal protection clauses of the Fourteenth Amendment, U.S. Constitution. This Court has supplemental jurisdiction over the state claims herein under 28 U.S.C. § 1367.

7.      Venue is properly established before the Court pursuant to 28 U.S.C. § 1391 as the Defendants are located in, and the Plaintiff's claims occurred or accrued in, Lawrence County, Mississippi, which is in the Northern Division of the United States District Court for the Southern District of Mississippi.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff timely filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and has received a notice of the right-to-sue from this agency.  A copy of the right-to-sue letter is attached hereto as Exhibit "A."

## FACTS

9.      Plaintiff incorporates by reference, as set forth herein, the allegations set forth in each preceding paragraph and further alleges as follows:

10.      Plaintiff, an African-American male, was employed as a teacher for the Lawrence County School District for nine years, beginning August 2007.  He holds a AA teaching license and is highly qualified to work as a teacher for the District based on his years of experience, certifications, accomplishments and excellent work record during his tenure.

11.      Lawrence County is a small rural community with a population of about 12,000 residents.  It is a community where it does not take long for news to travel, where no one is a stranger, and almost everyone knows substantial background information about almost all their community neighbors. The Lawrence County School District is, nevertheless, plagued with acts of racial discrimination that are utilized to

quiet African-Americans teachers through real and perceived threats to their livelihood. In the District, virtually all of the African-Americans who have challenged the "system" have been met with swift and harsh punishment that negatively impacted the terms and conditions of their employment. Making matters worse, the school district fails to enforce a federal consent decree that is meant to increase the retention rate of African-American teachers.

12.     Plaintiff worked under former Lawrence County Superintendent Tony Davis without any disciplinary measures being taken against him.

13.     In 2012, Defendant Tammy Fairburn began her term as the District's Superintendent.

14.     Throughout Plaintiff's tenure with the District, Plaintiff witnessed members of the community and African American teachers complain to Defendant Lawrence County School Board, Defendant Principal Darryl Turner, and to Defendant Fairburn about the racial discrimination that persists against African-American teachers as well as the racial discrimination against African-American students without any steps taken to prevent this conduct. Said complaints were also made to Defendants Lawrence County School Board, Principal Darryl Turner, and Tammy Fairburn about the repercussions that African Americans suffered after complaining about these inequities. Plaintiff directly provided notice of these inequities to each of these individuals and to the board as well. During all times relevant to this Complaint, Defendants Fairburn and the District refuse to abide by a consent decree ordered by the

4

United States District Court for the Southern District of Mississippi, Hattiesburg Division, to hire and retain black educators despite repeated complaints from African American members in the community.

Also, during Defendant Fairburn's tenure, Plaintiff witnessed the Lawrence County School Board repeatedly ratify or "rubber stamp" Defendant Fairburn's discriminatory actions launched against black teachers who were falsely accused of misconduct in order to encourage their resignations.   When this method was unsuccessful, Plaintiff witnessed the District fire black teachers based on racially motivated charges that arose under Defendant Fairburn.

15.   On or about September 2015, Plaintiff Brookins instituted a separate complaint to Defendant Turner that put Defendant Fairburn on notice about the discriminatory practices of the District.   Brookins informed Defendants Turner and Fairburn that the District's hiring practices were discriminatory and that the Defendants' administration of punishment towards his African-American son was discriminatory.   Defendants took no steps were taken to institute any changes to their discriminatory practices.   In fact, Defendants Fairburn and Turner failed to take any corrective steps to prevent the cause of actions listed in this complaint, including those areas where they operated as final policy makers[1] and ultimate decision makers for the District.

---

[1] Pursuant to 42 U.S.C. § 1983.

16.     Shortly thereafter, on or about October 2, 2015, Brookins was accused by three students with known disciplinary problems who conspired to make specious claims that Brookins had provided these students with a laptop containing pornographic images.  Though the story had blatant inconsistencies, Fairburn who held ultimate policy making authority with respect to, *inter alia*, teacher discipline, along with her subordinates Twala Oakes, and Darryl Turner, collectively seized on the opportunity to lead another campaign of racial harassment, retaliation, and discrimination against an African American teacher especially one who complained about the widespread discriminatory policies and practices within the district. Fairburn, Oakes, and Turner knew or should have known the allegations were untrue when they were made and purposely avoided documenting exculpatory evidence in direct contrast to their approach with Caucasian educators accused of misconduct.

17.     Fairburn, Oakes and Turner, took the unprecedented step to suspend Brookins without pay on or about October 15th and 16th of 2015 and formally reprimanded him based on trumped up charges that he violated district policy by, *inter alia,* providing a *personal laptop* that allegedly contained pornographic images which "failed to protect students from obscene material." They also trumped up additional charges such as failing to "report rumors" though it was nowhere in any district policy. Lastly, they claimed he "verbally intimidated" students by questioning them about the rumors.   Unlike the instances involving more egregious and far more credible accusations involving his Caucasian counterparts, these individuals later admitted to

making the decision to suspend and formally reprimand Brookins without pay prior to even receiving his version of events. Just as importantly, Brookins denied engaging in any misconduct associated with the charges raised by students with known disciplinary problems, and the district knew or should have known, however, that the laptop in question was not a personal laptop because it was purchased and provided by the district. Indeed, none of his actions were in violation of any district policy.

After Brookins informed the district's board, Turner, and Oakes that he requested a due process hearing in October 2015, he was immediately summonsed to the office by his principal, Darryl Turner, whereby Brookins reiterated his intentions to expose, *inter alia*, the LCSD, Turner, Oakes, and Fairburn regarding their discriminatory treatment towards minorities. Turner discouraged a challenge to the charges. Subsequently, days later, he levied threats regarding the consequences of doing so and Turner informed of the protocol whereby the district, and Fairburn would be made aware of his feedback and denials.   Notwithstanding this, Brookins complained about LCSD's discriminatory treatment towards African-American students, African-American teachers, and his son.

Subsequently, Turner and Fairburn placed a hold on Brookins' ability to attend training conferences, or travel within the district. When Brookins provided notice to each of these defendants, that his accusers were harassing him in violation of the district's anti-bullying policy, and in such a way as to impact the terms and conditions of his employment, no member of LCSD took any action to reduce the likelihood of

future conflict. This too was in direct violation of the policies of the district and inconsistent with how his Caucasian counterparts were treated. In fact, Principal Turner, who was the ultimate policy maker regarding certain lesser disciplinary matters such as the handling of office referrals, repeatedly refused to input Brookins' office referrals or discourage disruptive classroom behavior for the remainder of the school year. In addition, Fairburn who was the final policy maker with respect to the enforcement of district policies concerning student conduct once referrals were made and who supervised Turner, openly allowed students to refer to Mr. Brookins as "Mrs. Brookins" and to disrupt the classroom environment. This sexual harassment also served to undermine Brookins' authority in the classroom, which substantially reduced his ability to teach. Fairburn was deliberately indifferent to the substantial complaints about the lack of educational and disciplinary support based on the the race of students and teachers. There was no training provided to address these issues which caused the deprivation of Brookins' rights discussed in this Complaint nor were there any repercussions for doing so. Moreover, Fairburn restricted Brookins' internet access to educational websites—further limiting his ability to instruct the students. In essence, Brookins was no longer provided disciplinary support, his educational resources were reduced, and his pay was deducted on the basis of his race.

Not stopping there, Defendants Fairburn, and her subordinate Oakes, also harassed Mrs. Brookins, African-American wife of Plaintiff who worked in the district, by refusing to respond to her inquiries that affected the terms and conditions of her

employment and refused to train her in her official job duties. Around this same time, a member of the district threatened to follow Brookins' home as part of the so-called investigation of Mr. Brookins and pursuant to Fairburn and Turner's directives. Turner and Fairburn also threatened to require Mrs. Brookins to bring home student related work while he was on suspension with emphasis that his return was unlikely due to their influence on the board. Turner and Fairburn interrogated Mr. Brookins about his legal representation; required sudden travel at his own expense for training; encouraged student harassment; refused him access to his employee records, challenged his instructional and professional day with interruptions and embarrassment; and induced colleagues to testify falsely against him regarding the allegations involving indecency to a child. Based on the roles and responsibilities of these employees, and testimony at a due process hearing, the district had constructive notice of these complaints but took no action to intervene.

18.     On or about December 21, 2015, Brookins again complained about the discriminatory treatment of his African-American son, by his Caucasian teacher Candice Sandifer. When Plaintiff complained about the racial discriminatory treatment his son suffered and poor performance in her classroom as this teacher played a sexually explicit TV miniseries "Grey's Anatomy" during a majority of the class period, Turner refused to address his concerns. Instead, Turner pivoted and threatened that his wife Mrs. Brookins, was not adequately performing her job. Based on the roles and responsibilities of the members within LCSD, the district and Fairburn had

9

constructive notice of these complaints but took no action to intervene.

19.     On or about April 21, 2016, Brookins filed an EEOC complaint alleging, *inter alia*, complaints regarding Lawrence County's poor treatment of African-Americans.

20.     On or about April 20, 2016, Fairburn and Turner admitted at Brookins' due process hearing that she nor the district never initiated nor punished any other teacher based on the charges it levied against Brookins.  Fairburn's subordinate Twala Oakes admitted that her task investigation was not designed to find whether the accusations against Brookins were true; instead she was tasked by Fairburn with finding Brookins' guilty of a district violation.  At one point, Fairburn even admitted there was no evidence upon which to base some of her charges against Brookins.

21.     On or about April 20, 2016, it became clear that Brookins' suspension was designed to damage his reputation, and "blackball" him. Fairburn and her subordinates admitted at the due process hearing that although they claimed he was stripped of his teaching duties for nearly two weeks based on an investigation into his alleged misconduct, no investigation whatsoever occurred during the time he was suspended and that similarly situated whites had engaged in undisputed misconduct far more severe but were never suspended, held out for investigation, or even disciplined. The baseless investigation against Brookins diminished Brookins' reputation in this small community and fed into negative rumors of indecent exposure to children.   In essence, Turner and Fairburn operated within the district's custom, and extended the

campaign of intentionally smearing and harassing minority teachers based on his race. Defendants also attempted to quiet Brookins' complaints of systematic racism against minority teachers and students campus wide, including his son, and to ultimately end his employment with the district.

22.     Throughout the remainder of that 2015-2016 school year, Fairburn communicated that Brookins' job was in jeopardy; she threatened/stressed the hearing process could have harsher penalties than her initial ruling, she supported/promoted the harassment of Turner, and other school officials.  She made clear that she possessed influence over the board members. Fairburn refused to address Brookins' pleas for the intimidation and harassment to end though she suspended Brookins' in contravention of school board policy.  The board was also notified of this harassment and workplace environment and its negative effects, yet it later ratified Fairburn's conduct.

As a result of the District's repeated ratification of this hostile work environment, and discrimination, Plaintiff was also constructively discharged at the end of the 2015-2016 school year.

23.     On June 30, 2016, Brookins resigned from his position.

24.     Ultimately, Plaintiff was replaced as a teacher by a white female.

25.     On or about August 16, 2016, the LCSD, Fairburn, and certain members of the Lawrence County School Board upheld the suspension, and baseless allegations against Brookins after he had already been constructively discharged.  The board failed to identify and acknowledge reasons for the charges and ultimately punished Brookins for

11

grounds separate and apart from the actual charges against him. In short, the district caused these violations and were repeatedly deliberately indifferent to Brookins' adverse employment actions suffered based on Plaintiff's race.

## COUNT ONE

### Violation of Title VII-Racial Discrimination

26.    Plaintiff incorporates by reference, as set forth herein, the allegations set forth in each preceding paragraph and further allege that the LCSD is liable for violation of Title VII for the following reasons:

27.    Plaintiff is an African-American male protected under Title VII.  He was well-qualified for the position as teacher within the District.

28.    As shown herein, Defendants discriminated against Plaintiff and treated him less favorably than similarly-situated Caucasian employees and caused him to suffer adverse employment actions.  Defendants, Fairburn and Turner engaged in a pattern of wrongful and discriminatory conduct that was known and ratified or agreed to by the District.   Fairburn, as the final policy maker with respect to teacher and student discipline, had a long history of ignoring prior incidents of racial discrimination and herself engaged in mistreatment of African-American teachers and students as well as retaliation against these individuals who engaged in protected activity under Title VII to which the LCSB was also aware.

The LCSB took no steps to intervene just as it ignored the federal consent decree regarding the retention of African-American teachers.  In addition, the board set the tone

and direction for these incidents of the deprivation of Plaintiff's rights by approving, ratifying, and condoning these constitutional violations by failing to discipline, hold accountable, or even investigate allegations of misconduct levied against Fairburn or her subordinates for such deprivations.

Through this pattern and practice, Defendants sought opportunities to harass, constructively discharge, or fire minority teachers, and Plaintiff suffered the same fate. Defendant Turner was delegated final policy making authority over certain aspects of the terms and conditions of Plaintiff's employment while Fairburn remained the final policy maker of all other areas of Plaintiff's employment with the exception of an ultimate hiring or firing decision. For example, he was the final policy maker as to when to provide disciplinary support to teachers. He altered the terms and conditions of employment for African-American teachers, including Plaintiff, by failing to provide any disciplinary support based on race. He also also selectively escalated allegations against Brookins which he knew were false but led to adverse employment actions, but ignored credible allegations of wrongdoing against Caucasian teachers that protected them from the same. Similarly situated Caucasian teachers were not disciplined, investigated, or fired for more egregious nor were the terms and conditions of their employment negatively impacted. This was made known to Fairburn and both Fairburn and Turner both admitted that they engaged in an unnecessarily protracted "investigation" to the school board that ultimately served as a reminder of their intention to fire Plaintiff if he

did not resign voluntarily. Plaintiff was not provided access to the resources necessary to adequately perform his job, and his requests for these resources were repeatedly ignored.

29.     This racially discriminatory hostile work environment and disparate treatment by Defendants Fairburn and Turner was so pervasive and consistent that it was a pattern and practice of the District, and the District knew or should have known about it. The District took no actions to stop this wrongful conduct. Each defendant failed to train or supervise their subordinates which caused the deprivations of the constitutional rights discussed in this Complaint and they were deliberately indifferent to the violations of these rights despite the systematic and widespread examples of such violations throughout Fairburn's tenure.

30.     Due to the Defendants actions, Plaintiff worked in an abusive and hostile work environment that made his employment intolerable. Turner and Fairburn, as final policymakers, denied Brookins training, professional development, the ability to maintain good order and discipline amongst students under his care, the necessary information pertaining to students to designated personnel in the school, the use of equipment normally used during lessons; and exacted varying levels of punishment based on the race of students. As such, he suffered psychological and emotional distress that is ongoing.

31. As any reasonably employee would, Plaintiff felt compelled to resign and was thereby constructively discharged from his employment as a teacher with the district. Plaintiff was forced to choose between enduring racially discriminatory acts such as

baseless investigations that publicized defamatory communications that each Defendant knew was false; inducement of allegations that subjected him to criminal exposure; improper pay deductions; unjust alterations in the terms and conditions of his employment; or resigning voluntarily.

32.     Defendants have collectively violated Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, as a result of their disparate treatment, racially abusive and hostile work environment, and intentional discrimination against Plaintiff in the terms and conditions of his employment due to his race.  This wrongful conduct has caused Plaintiff's damages in the form of lost wages and benefits, mental anguish and emotional distress, and other economic and non-economic damages addressing Plaintiff's wrongful deprivation of all the benefits and privileges of employment.

33.     Defendants willfully and maliciously perpetrated the foregoing intentional discrimination, and/or acted wantonly and with reckless disregard to their wrongful actions.  As such, an award of punitive damages is also requested.  Pursuant to Title VII, Plaintiff also requests an award of all attorney's fees and costs.

## COUNT II

### Violation of Title VII-Retaliation
### 42 U.S.C. § 2000e-3(a), 42 U.S.C. 42 U.S.C. § 2000e-5(f)(3)

34.     Plaintiff incorporates by reference, as set forth herein, the allegations set forth in each preceding paragraph allege that the LCSD is liable for violation of this separate provision of Title VII and for the following reasons:

35.    Plaintiff engaged in protected activity that included, but is not limited to, complaining to Defendants about racial discrimination, participating in the due process hearing involving these matters, as well as affiliating with an organization that opposed discrimination of each of the Defendants. Turner, Fairburn and the Lawrence County School Board submitted to a custom and practice of adverse actions against African-Americans who challenged the discriminatory practices of the Lawrence County School District such as Brookins prior to and during Fairburn's tenure.   The school board and Fairburn was also deliberately indifferent to the lack of training and supervision which caused the violation of Title VII as to Brookins throughout his tenure.   Each of the defendants ignored previously filed legal complaints filed against LCSD for such discriminatory and retaliatory behavior.  In addition, at board meetings, members of civil rights groups witnessed Fairburn's subordinates such as Twala Oakes who took pictures of those African-American citizens who complained of discrimination.   Individuals, Turner and Fairburn both retaliated against Brookins through adverse actions that were within the purview of their policy making authority following his aforementioned complaints about the custom of racist policies and actions within the district.  Moreover, after Brookins engaged in protected in activity by filing an EEOC charge alleging racial discrimination on April 21, 2016 and subsequently the Lawrence County School Board rubber-stamped Fairburn's discriminatory decision to suspend Brookins without pay with no basis in fact.

16

36.    Defendants constructively discharged Plaintiff's employment in retaliation for his discrimination complaints and based on his race.

37.    Defendant also retaliated against Plaintiff by, *inter alia*, undermining his relationships with his students; suspending him without pay, refusing to support his classroom, and improperly making pay deductions.  These adverse employment actions materially and adversely changed Plaintiff's overall terms and conditions of employment.

38.    Defendants' retaliatory acts against Plaintiff were a direct and proximate result of his protected activities.

39.    A reasonable employee would find Defendants' retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

40.    Defendants' conduct has been intentional, deliberate, willful, malicious reckless, and conducted in callous disregard to Plaintiff's rights, entitling him to punitive damages.

41.    Defendants' actions and failures to act have caused Plaintiff to suffer harm, including without limitation lost earnings, lost benefits and other severe financial losses, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

42.    Plaintiff is therefore entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

44.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT III

### Race Discrimination Based on 42. U.S.C. § 1981 Under § 1983

44.     Plaintiff incorporates by reference the factual allegations set forth in preceding paragraphs, and asserts violation of 42 U.S.C. § 1981 against each Defendant and further allege as follows:

45.     Plaintiff is a member of a protected class, namely African-American.

46.     At all times relevant, Plaintiff was in a contractual relationship with Defendants LCSD, Turner, and Fairburn purposefully discriminated against him because of his race.

47.     Contained with the Personnel Policy Manual, Brookins was protected via contract form discrimination through policies and practices with respect to compensation, terms or conditions of employment because of an individual's race, color, ethnic, or national origin, religion, gender, height, weight, age, marital status, political beliefs disability, or handicap which does not impair an individual's ability to perform adequately in that individual's particular position or activity.  The district interfered with this provision as well the provision that states it will not tolerate behavior that interferes with the employee's work performance or which creates an offensive, or hostile work environment based on the aforesaid acts.  The district also provided different due process protections and protections from bullying under the contract for Brookins as compared to white employees.   The district also interfered with the provision that promised to support the teachers as the authority in the classroom  with respect to disciplinary matters.

48.     During the course of Plaintiff's employment, Defendants Turner, Oakes, and Fairburn violated Plaintiff's rights by depriving Plaintiff of his right to the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's employment contract as is enjoyed by White employees, in violation of 42 U.S.C. § 1981(b).

49.     During the course of Plaintiff's employment with Defendant LCSD, Plaintiff did not enjoy the same benefits, privileges, terms, and conditions of employment as did White employees.

50.     Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in this complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the surety of persons and property as is enjoyed by White citizens, in violation of 42 U.S.C. § 1981.

51.     Defendants' treatment, practices and policies directed toward Plaintiff are more fully described in this complaint, denied Plaintiff the right to make and enforce contracts, as enjoyed by White citizens, in violation of 42 U.S.C. § 1981.

52.     Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of his race.

53.     Plaintiff asserts that the intentioned discrimination committed by Defendants interfered with his contractual rights in violation of 42 U.S.C. § 1981(c) and the case law supporting such a claim and seeks redress for these violations of Title VII and 42 U.S.C. § 1981 pursuant to the remedies provided under 42 U.S.C. § 1983.

54.     Plaintiffs assert that both Fairburn, Turner and the Lawrence County School Board constitute policy makers under 42 U.S.C. § 1983.  Upon information and belief, the Board has delegated to the Superintendent the authority to make policy concerning all personnel matters within LCSD except ultimate decisions such as hiring and firing full-time teachers.  The Superintendent Fairburn has full authority concerning the time terms and conditions of employment involving the time-frame and scope of investigations, pay deductions, issuance of reprimands, negative reporting to the state, and administrative matters such as administrative leave etc.  In addition, the principal Turner has policy making authority concerning terms and conditions of employment concerning disciplinary support related to maintaining a classroom environment conducive to learning and the initiation of investigations.   Upon information and belief, LCSD, through its board have committed both its own discriminating practices, policies, and customs and has adopted and/or intentionally acquiesced in the discriminatory practices, polices, and customs through their adoption of these individuals (Fairburn, and Turner) systematic and overt discrimination against African-Americans including Plaintiff.

55.     For these discriminating practices, customs, individual decisions, and policies enacted by Defendants, Plaintiff seeks redress through 42 U.S.C. § 1983.

The discrimination of Defendants Turner, Fairburn, and the Lawrence County School District affected benefits and privileges of his employment contract with the Lawrence County School District.

56.     Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

## COUNT IV

**District's Breach of District policies and Procedures and Constructive Discharge**

57.     Plaintiff readopts and reasserts all allegations set forth in the preceding paragraphs and asserts the following against LCSD:

58.     The district, furnishes all of its employees a manual of its' policies and procedures, entitled Personnel Policy Handbook.  This manual sets forth specific procedures and terms to be followed by Defendants in regards to, among others, employment decisions and the terms and conditions of employment and the Mississippi Education and Employment Procedures Act, Miss. Code. Ann. § § 37-9-101, *et seq*.

59.  Defendants owed a Plaintiff a duty to comply with the District's own policies procedures specifically provided for in the subject manual during the 2015-201 school year.  The district failed to comply with its own policies, however.

60.     Contained with the Personnel Policy Manual, Brookins was protected via contract form discrimination through policies and practices with respect to compensation, terms or conditions of employment because of an individual's race, color, ethnic, or national origin, religion, gender, height, weight, age, marital status, political beliefs disability, or handicap which does not impair an individual's ability to perform adequately in that individual's particular position or activity.  The district interfered with this provision as well the provision that states it will not tolerate behavior that interferes

21

with the employee's work performance or which creates an offensive, or hostile work environment based on the aforesaid acts.  The district also provided different due process protections and protections from bullying under the contract for Brookins as compared to white employees.   The district violated the provision which afforded Title IX protection as it allowed students to sexually discriminate and it also interfered with the provision that promised to support the teachers as the authority in the classroom  with respect to disciplinary matters.  It also failed to provide Plaintiff a fair and impartial hearing regarding the district's suspension decision.

61.    Defendants' failure to follow the specific terms of the District's employee manual as well as the constructive discharge renders them liable to Plaintiff for breach of contract.

62.    Defendants' breaches caused Plaintiffs lost wages and benefits, attorneys' fees, mental distress and emotional anguish and other damages.

63.    Defendants' breaches were intentional, or constituted gross negligence, malice, and or reckless disregard for the rights of Plaintiffs' thus Plaintiff is entitled to punitive damages in addition to actual damages.

## COUNT V
**First Amendment Retaliation Under 42 U.S.C. § 1983**

64.    Plaintiff readopts and reasserts all allegations set forth in the preceding paragraphs and asserts the following against each Defendant:

22

65.     Plaintiff's right to free expression constituted speech of public concern as it involved, *inter alia*, discriminatory hiring practices of the district and discriminatory treatment levied against his son.  It was not made pursuant to his official job duties or knowledge derived from it.  However, the Lawrence County School Board submitted to a custom and practice of adverse actions against those who challenged the discriminatory practices of the Lawrence County School District such as Brookins.  The school board members, Fairburn, and Turner each attempted to chill the speech of minorities who challenged the district's custom of discrimination.  For example, at board meetings, these members witnessed individuals who only took pictures of those citizens who complained of discrimination at school board meetings.  The school board and Fairburn was also deliberately indifferent to the lack of training which caused the violation of Brookins' first amendment rights.  Individuals, Turner and Fairburn individually retaliated against Brookins through adverse actions that were within the purview of their policy making authority.

66.     Plaintiff's interest in speaking on the aforementioned matters of public concern outweighed the employee's interest in promoting efficiency in the workplace.  His speech did not impact negatively impact the efficiency in the work place although it motivated Defendants' adverse action.

67.     The unlawful actions of the Defendants, as alleged herein, were made in bad faith and in retaliation for Plaintiff's exercise of his constitutionally protected rights to free speech and free association.

68.     As a direct and proximate cause of Defendant's bad faith retaliatory actions, Plaintiff was injured in his rights to free speech and as guaranteed by the First and Fourteenth Amendments.

## COUNT VI DEFAMATION
### Libel/Slander

69.     Plaintiffs readopt and reassert all allegations set forth in the preceding asserts violation of this count against each Defendant and further allege as follows.

70.     Plaintiff has the reasonable belief that Defendants have each ratified verbally and/or in writing published false information concerning Plaintiff to former co-workers, parents, and members of the community, that Plaintiff was incompetent, abusive, and sexually indecent towards children, all for the malicious purpose of inuring Plaintiff's reputation and inflicting mental anguish.  At all times relevant to these claims, all Defendants were acting within the course and scope of their employment.

71.     This defamation proximately caused damages to Plaintiff's personal reputation and character, caused Plaintiff to suffer mental anguish and emotional distress and have otherwise caused economic losses to Plaintiff.  As a result of these aforementioned acts, Plaintiff suffered severe and continues to suffer severe, irreparable injuries.  As a result of this conduct, Plaintiff seeks an award of actual damages and punitive damages in an amount to be determined by the jury.

## DAMAGES

72.     Plaintiff reincorporates all of the preceding paragraphs by reference.

73.     Plaintiff is entitled to an award of attorney's fees and costs, as pursuant to Title VII, 42 U.S.C. § 2000, et seq., and pursuant to 42 U.S.C. § 1983, § 1988 and the following categories of damages:

(a)     Past and future lost wages and benefits, including back pay, fringe benefits, and other economic damages;

(b)     Mental anguish and emotional distress;

(c)     Damages to Plaintiff's personal reputation, pain and suffering, humiliation and embarrassment;

(d)     Actual and compensatory damages;

(e)     Incidental and consequential damages;

(f)     Punitive damages;

(g)     Interest damages as allowed by law;

(i)     A permanent injunction enjoining Defendant LCSD, its officers, agents, employees, and attorneys and all persons in active concert or participation with it, from engaging in racial discrimination or from discriminating on the basis of race.

(j)     An order that LCSD institute and carry out policies and practices and programs which provide equal employment opportunities for African Americans and which eradicate the effects of past and present unlawful employment practices, including enforcement of the aforementioned consent decree.

(j)     Award such other relief to which Plaintiff may be entitled under law and in equity

**WHEREFORE PREMISES CONSIDERED**, Plaintiff, Jason Brookins respectfully moves this Honorable Court for a trial by jury and to enter judgment in favor of Plaintiff against Defendants, Lawrence County School District, Tammy Fairburn, in both her official and personal capacity, Daryl Turner, in both his official and personal capacity, and John Does (1-10), in an amount as may be determined by the jury to fully compensate Plaintiff for all actual and punitive damages, plus pre-and post-judgment interest, attorneys' fees and all costs incurred in filing and prosecuting the subject action, and for such other and further relief as the Court deems just and proper.

       **Respectfully submitted,** on this, the 28th day of April, 2017.

/s/ E. Carlos Tanner, III
E. CARLOS TANNER, III
TANNER & ASSOCIATES, LLC
P.O. Box 3709
Jackson, Mississippi 39207
carlos.tanner@thetannerlawfirm.com
601.460.1745 (telephone)
662.796.3509 (facsimile)

/s/ Volney Brand
Brand Law PLLC
5001 Spring Valley Rd Suite 400E
Dallas, Texas 75244
Telephone: 214-932-1472
Fax: 214-932-1473
(pro hac vice application to be filed)