**IN THE UNITED STATE DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JASON BROOKINS**                                                                **PLAINTIFF**

**V.**                                                        **CIVIL ACTION NO. 2:17-cv-60-KS-MTP**

**LAWRENCE COUNTY SCHOOL**
**DISTRICT; TAMMY FAIRBURN, ETAL.**                            **DEFENDANTS**

**LAWRENCE COUNTY SCHOOL DISTRICT, TAMMY FAIRBURN,**
**AND DARRYL TURNER'S MOTION FOR SUMMARY JUDGMENT**

Come now, Lawrence County School District ("LCSD"), Tammy Fairburn ("Fairburn"), and Darryl Turner ("Turner"), by and through counsel, and submit their Memorandum of Authorities in Support of Motion for Summary Judgment as follows:

**INTRODUCTION**

This suit arises out of Plaintiff's former employment as a teacher with the LCSD. *CM/ECF Doc. No. 1*. More specifically, the Plaintiff, who is African-American, claims he was discriminated against because of his race and that he was retaliated against in violation of Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. *Id.* Plaintiff also asserts state law claims for breach of contract claim, constructive discharge, and libel/slander. However, Plaintiff has failed to support any of his claims against LCSD, Fairburn, or Turner and, thus, Plaintiff's remaining claims are ripe for dismissal.

**FACTUAL BACKGROUND**

Following an investigation into an incident in which four (4) students alleged they saw inappropriate material on Plaintiff's IPad, Plaintiff was suspended for two (2)

days with pay. Subsequently, Plaintiff resigned his position and filed suit alleging racial discrimination in his employment.

### A.      Incident with IPad.

According to Plaintiff, on September 24, 2015, at the end of his Fourth Block Earth Sciences class, he allowed a student named E.B. to utilize an IPad[1]. *Hrg. Trans., Vol. III,* at 77.  Plaintiff testified that he gave E.B. the IPad just before the end of the block so that he could look at the periodic table. *Pl.Depo.,* at 46-47.  E.B. returned to his desk with the IPad where he and another student, Q.J., were seated. *Id.*  Plaintiff could not see the screen of the IPad to supervise the content being viewed and never walked over to the students to see what they were consuming. *Id.* at 50-51. Plaintiff has no knowledge whether students accessed the school internet service via the IPad. *Hrg. Trans. Vol. III* at 71-72. When the bell rang, the IPad was returned to Plaintiff. *Id.*

### B.      Plaintiff Personally Investigates Rumors.

On Friday, September 28, 2015, Plaintiff was standing outside of his classroom prior to Fourth Block beginning when a student approached him and told him Plaintiff "E.B. [was] spreading rumors about [him]." *Hrg. Tranc. Vol. III,* 78; *Pl. Depo.*at 56. Plaintiff questioned her and she said students were "spreading rumors that they saw something bad on" his IPad. *Id.* While Plaintiff agrees that when a student accuses a teacher of something inappropriate, it is important to get to the bottom of it very quickly, he did not report the rumors to anyone in the LCSD administration. *Id.* at 58;

---

[1] The IPad was given to Plaintiff after he attended a class at Jackson State University. There is ambiguity in the testimony as to who owned the IPad but the ownership is irrelevant for purposes of this motion.

2

*Hrg. Tranc. Vol. III,* 105, 110-111. Rather, Plaintiff decided to investigate the rumors himself. *Id.*

The class that was beginning was Earth Sciences—the class that E.B. was in when he previously viewed the IPad. *Pl. Depo.* at 57.  Plaintiff caught E.B. as he was heading into class, left his classroom unattended and took E.B. across the hallway inside another room—the Lab. *Id*. at 61-62; 78-81.  Plaintiff was not certain whether the door to the Lab was closed or "propped open" but he questioned E.B. without the participation of an administrator, adult or teacher about the "rumors[2]." *Id*. at 62, 66. Plaintiff testified he asked E.B. if he was spreading rumors about him to which E.B. said no. *Id*. at 64-65. Plaintiff informed him that another student said he was and then admonished him that if he saw anything inappropriate he needed to tell him so that they could go to the administration. *Id*. at 65. E.B. told Plaintiff he had not said anything, it was Q.J. *Id.*

Plaintiff walked E.B. back to his unsupervised classroom where he took Q.J. across the hallway to the Lab.  *Id*. at 67-68. Plaintiff questioned Q.J. about the rumors which she denied. *Id*. at 69. Again, no other teacher, adult or administrator participated in the questioning. *Id.* Plaintiff then returned Q.J. to the classroom and questioned two (2) other students in a similar fashion. *Id*. at 71. According to Plaintiff, these students also denied the rumors. *Id*. at 72-73.  Plaintiff admitted in his deposition that he never notified any LCSD administrator about the rumors or his questioning the students. *Id*. at 75.  Plaintiff did, however, change the seating assignments in his room and later wrote

---

[2] In his deposition, Plaintiff testified that a teacher and two (2) students were in the lab.  Plaintiff's testimony; however, reveals that they did not participate in the questioning. *Id*. at 65.

E.B. up. *Hrg. Trans. Vol. III*, at 86-87, 200. To Plaintiff's recollection, this was not something that Plaintiff had done prior to the incident with E.B. and Q.J. despite his belief that both students were troublemakers. *Id.* at 57, 91. Furthermore, Plaintiff took away a break he had been giving students prior to the incident IPad incident. *Id.* at 201.

C.       **LCSD administration notified of rumors.**

On Friday, October 2, 2015, LCSD High School Principal Darrell Turner received a report from a teacher that she had heard rumors about students seeing an inappropriate video and the name used was Brookins. *Hearing Transc.*, VI., at p. 18. Turner received the report and pulled a roster of students to see whether or not students could shed light on the rumors. *Id.* at p. 19. One of the student names that came up was "E.B." *Id.* at p. 20. E.B. appeared in Principal Turner's office that afternoon on a disciplinary matter and after addressing the same, Turner questioned him about the rumors. *Id.* at 20-21. According to E.B., Plaintiff gave them a break at the end of class and allowed him to use his IPad. *Hrg. Transc. Vol. I.* at 21. While viewing the IPad, E.B. and several other students "began to experiment" and go different places. *Id.* E.B. stated that he and several other students looked in the deleted files of the IPad and saw a video of a "man masturbating." *Id.* at 22. Significantly, E.B. also reported that Plaintiff questioned several students, including himself individually about rumors of an inappropriate video. Plaintiff readily admits that he personally interviewed students individually about the rumors and failed to notify administrators of the rumors or interviews.

4

One of the students E.B. mentioned as having been interviewed was his friend "Q.J." *Hrg. Trans. Vol.I*, at 22-23. Turner had Q.J. brought to the office to speak with her about the rumors. *Id.* Along with assistant principal Collins, Turner questioned Q.J. about the incident and, although there were "[s]light differences…for the most part, the story was the same." *Id.* at 23. The consistency of the stories concerned Turner and he had both E.B. and Q.J. given written statements about the incident. *Id.*; see *Statements.* Turner also had Superintendent Fairburn updated regarding the situation. *Id.*

The following Monday, Turner, Collins and personnel manager Twyla Oakes interviewed 2 other students who purportedly saw the video and the stories given "were very similar" to those previously provided by E.B. and Q.J. *Hrg. Trans. Vol.I*, at 22-23.  Turner was greatly alarmed because the students were "consistently telling the same story." *Id.* at 24. Superintendent Fairburn was provided a summary of the interviews. *Id.*

**D.  October 2, 2015 Meeting with Plaintiff**

On October 2, 2015, Turner called Plaintiff to his office to discuss the students' statements. *Hearing Trans. Vol. I*, at 38.  In the presence of Mr. Collins and Ms. Oakes, Turner questioned Plaintiff about the students' allegations as well as his personally investigating the matter by interviewing the students outside of his unsupervised classroom. *Id.* Plaintiff admitted during that meeting that he had knowledge of the rumors and that he had questioned the students one-on-one outside of his classroom trying to determine if they were spreading rumors about him. *Id.* at 39-40; *Hearing Trans. Vol. III*, at 80-83. At that time, Turner discussed with Plaintiff several issues of

5

concern including the video itself, the manner in which he interrogated the students, the student's allegations of retaliation by Plaintiff towards them as well as the fact that Plaintiff never came to the administration about the rumors and his personal questioning of students. *Hearing Trans. Vol. I*, at 41-42. Plaintiff was given a letter that he was being placed on paid administrative leave to facilitate a full investigation of the matter. See, *10-6-15 Oakes Letter*.

### E.   October 14, 2015 Letter & Attorney Letter.

On October 14, 2015, Plaintiff was provided a letter from Superintendent Fairburn informing him that the investigation into the incident was complete and that he was being suspended for 2 days (10-15-15 & 10-15-15) for: (1) failing to protect his students from obscene material and violating the Internet Acceptable Use Policy; (2) failing to properly supervise students during the school day; and (3) attempting to verbally intimidate selected students. See, *10-14-15 Letter from Fairburn*.  The Letter notified Plaintiff of his right to seek a public hearing on the charges within 5 calendar days. *Id*. On October 16, 2015, Plaintiff gave the LCSD notice that he would like a public hearing on the charges. See, *10-16-15 Plaintiff Letter*.

On November 2, 2015, Superintendent Fairburn forwarded correspondence to Plaintiff asking for the name of his new attorney as his prior attorney was no longer employed. See, *11-2-15 Fairburn Letter*.  The Letter further informed Plaintiff that his public hearing was scheduled for November 9, 2015 at 8:30AM. *Id*.

### H.   <u>Plaintiff's Administrative Hearing.</u>

On February 11-12, 2016, March 3-4, 2016, March 31, 2016, April 1, 2016, and April 20, 2016, a multi-day hearing was held before a hearing officer regarding the decision to suspend Plaintiff for 2 days. See, *Hearing Transc. VI.* at 1.  On August 11th the Hearing Officer recommended that Plaintiff's 2 day suspension be upheld. *Id.* The LCSD subsequently upheld that decision; however, Plaintiff was paid during his suspension. *Pl. Depo.*, at 85-86. Plaintiff currently has an appeal pending in Chancery Court. *MEC, 39CH1:16-cv-00143-GM.*

## CLAIMS & PROCEDURAL POSTURE

On April 27, 2017, Plaintiff filed suit in this Court asserting claims under both federal and state law. Plaintiff asserts the following: (1) Title VII-Racial Discrimination; (2) Title VII—Retaliation; (3) Racial Discrimination—42 U.S.C. §§ 1981 and 1983; (4) First Amendment Retaliation—42 U.S.C. § 1983.  However, this Court subsequently issued an  Order granting Fairburn and Turner's Motion as to the Title VII claims against Fairburn and Turner, individually. *CM/ECF Doc. No. 19,* at 3-4. The remaining federal claims are: (1) Title VII-Racial Discrimination (official capacity only); (2) Title VII—Retaliation (official capacity only); (3) Racial Discrimination—42 U.S.C. §§ 1981 and 1983; and (4) First Amendment Retaliation—42 U.S.C. § 1983. Plaintiff also asserts state law claims for breach of contract claim, constructive discharge and libel/slander.

## SUMMARY JUDGMENT STANDARD

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The United States Supreme Court has explained that the language of Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact...." *Harris v. Mississippi Valley State Univ.*, 899 F. Supp. 1561 (N.D. Miss. 1995)(citing *Celotex,* 477 U.S. at 324.).  Once a properly supported Motion for Summary Judgment is presented, the nonmoving party must rebut it with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  The non-moving party cannot rely on mere denial of material facts or unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda; rather, the non-movant "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg 7 Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

## LEGAL ARGUMENT

### I.    YOUNGER ABSTENTION

"In rare cases, a federal court abstains from the exercise of federal jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593 (2013). (Abstention from the exercise of federal jurisdiction is the exception, not the rule.)" *Morris v. Robinson*, 2017 WL 4510593, *4 ( W. Dt. Tex. June 5, 2017). The Younger doctrine requires federal courts to abstain from "hearing claims for injunctive and declaratory relief '[when] assumption of jurisdiction ...would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character.'" *Floyd v. Amite Cnty. Sch. Dist.*, 376 F. Supp. 2d 693, 695. Federal courts should abstain from enjoining a pending state proceeding unless plaintiff shows bad faith, harassment, or any other unusual circumstances that would call for equitable relief such as a flagrantly and patently unconstitutional state statute. *Younger v. Harris*, 401 U.S. 47, 53-54 (1971). Bad faith or harassment apply only if Plaintiff demonstrates that state officials proceeded "without hope of obtaining a valid conviction." *Gates v. Strain*, 885 F. 3d 874, 881 (5th Cir. 2018).

The *Younger* doctrine applies to claims of equitable relief when 3 conditions: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. Louisiana Pub. Def. Bd.*, 677 F. 3d 712, 716 (5th Cir. 2012)(quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). The state

proceedings must afford an adequate opportunity to raise constitutional challenges. *Wightman v. Tex. Supreme Ct.*, 84 F. 3d 188, 189 (5th Cir. 1996).

This case is nearly identical to *Floyd v. Amite Cty. Sch. Dist.*, 376 F. Supp. 2d 693, 696 (S.D. Miss. 2005) in which a principal was terminated and appealed that termination to Chancery Court via Miss. Code Ann. § 37-9-59. *Id*. at 694.  During the pendency of the appeal, the principal brought suit in federal court based on, among other things, Title VII. *Id.*  The District moved for a stay based on *Younger* and the Court granted the same. In *Floyd*, the District Court found that all three elements of *Younger* were present. In particular, there was an ongoing state proceeding, the subject matter of the state proceeding implicated important state interests (interest in education and fair handling of employee matters in accordance with School Employment Procedures Act, Miss. Code Ann. § 37-9-101) and the Principal had an adequate opportunity in the state forum to raise constitutional challenges. *Id*. 696.  *Younger* abstention, therefore, required a stay as to the claims for injunctive relief. *Id*. at 697.  Given the posture of the claims for injunctive relief, the Court stayed the claims for monetary damages as well. *Id.*

The same issues in *Floyd* arise here and this Court should abstain from ruling in this matter until the pending state court Chancery action is resolved. However, there is another opinion bears mentioning: *Giles v. Shaw Sch. Dist.*, 92 F. Supp. 3d 533 (N.D. Miss. 2015). In *Giles*, Judge Aycock ruled that a School District was not entitled to *Younger* abstention based on the USSC's decision in *Sprint Commc'ns, Inc. v. Jacobs,* 134 S.Ct. 584, 593, 187 L.Ed.2d 505 (2013). Judge Aycock found that *Sprint* altered the *Younger* analysis. In particular, she found that *Sprint* held that "[t]he three *Middlesex*

conditions...were not dispositive; they were, instead, additional factors appropriately considered by the federal court before invoking Younger." *Id*. at 539. She then noted that the USSC "shifted the focus by instructing lower courts to only employ *Younger* abstention when state proceedings present one of three "exceptional circumstances." *Id*. Those "circumstances are (1) "ongoing criminal prosecutions[,]" (2) "civil enforcement proceedings[,]" and (3) "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id*.

After considering those factors, she found that the District was not entitled to *Younger* abstention. *Id*. at 539. The LCSD believes this opinion was wrongly decided inasmuch as Judge Aycock found that the Chancery matter did not qualify as a civil enforcement proceeding, and did not involve orders uniquely in furtherance of the state courts' ability to perform its judicial functions. Here, the Chancery Court has currently pending Plaintiffs appeal on the administrative hearing and will issue an Order as to the validity of the District's actions. While the state court action does not involve an order such as those noted in *Sprint*, the framework set up by the MS Legislature in the School Emply. Proc. Act, Miss. Code Ann. § 37-9-101 makes clear that this category is an important concern which is to be handled in Chancery Court. *Machetta v. Millard*, No. 4:17-CV-00571, 2018 WL 1172654, at *4 (S.D. Tex. Mar. 5, 2018)(finding child custody determinations integral to state's ability to perform judicial functions under Texas Family Code and because case implicates important state court's judicial functions—its ability to determine the "best interest of the child"— case falls into one of exceptional circumstances where Younger abstention is appropriate); *Juidice v. Vail*, 430 U.S. 327, 336

n.12, (1977)(applying *Younger* abstention to a challenge to a state court's contempt order); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14 (1987)(applying *Younger* abstention to a request to enjoin a state judgment, after a state jury had already rendered a verdict); *Boerschig v. Trans-Pecos Pipeline*, L.L.C., 872 F.3d 701, 705 (5th Cir. 2017)(finding that eminent domain proceedings do not fall under the third category).  The District believes that this situation should, in fact, fall under the third category based on the fact that a conflicting decision from this Court here will undermine the Chancery Court's judicial functions and seeks, in good faith, to alter existing law to the extent this argument is in conflict with the same.

## II.     ROOKER FELDMAN

The *Rooker Feldman* doctrine divests this Court of jurisdiction. Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction to review a final state court decision arising out of a judicial proceeding unless a federal statute specifically authorizes such review. *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 486 (1983). This is because no court of the United States—other than the United States Supreme Court—can entertain a proceeding to reverse, modify, or otherwise engage in an appellate review of, a state court decision. *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994). This jurisdictional bar is not limited to actions in federal court that explicitly seek review of a state court decision, but extends to those "in which the constitutional claims presented...are inextricably intertwined with the state court's grant or denial of relief." *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986). A claim is "'inextricably intertwined' with a state court judgment if, in order to find in the plaintiff's favor, the federal court

would have to conclude that the state court wrongly decided the issues before it or would otherwise have to void the judgment.'" *Centifanti v. Nix*, 865 F.2d 1422, 1430 (3d Cir. 1989). The Fifth Circuit has long held that a plaintiff cannot circumvent the Rooker-Feldman doctrine merely by recasting a complaint in the form of a federal civil rights action. *Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 351 (5th Cir. 2003). Even where a state court action is still pending, the federal court lacks jurisdiction in situations such as this. *Nixon v. Attorney Gen. of the State of Texas Greg Abbott*, No. A-12-CV-232 LY, 2012 WL 12878176, at *4 (W.D. Tex. Apr. 12, 2012).

Here, Plaintiff was given a multi-day administrative hearing on his suspension which, after he lost, he appealed to the Chancery Court. *MEC, 39CH1:16-cv-00143-GM*. That matter is still on appeal. The appeal concerns the very issues about which Plaintiff currently complains, his suspension from employment based on the IPad incident and, thus, is inextricably intertwined with this federal court action. The Court, therefore, lacks jurisdiction over this matter and must dismiss the claims without prejudice or stay this action pending the resolution of the Chancery action.

## III.    TITLE VII-RACIAL DISCRIMINATION (OFFICIAL CAPACITY ONLY)

Plaintiff alleges that he was subjected to racial discrimination under Title VII inasmuch as the LCSD purportedly "treated him less favorably than similarly-situated Caucasian employees…" *Compl.* ¶ 28. Plaintiff contends that Mr. Collins "selectively escalated allegations" against him which he knew were false and ignored credible allegations of wrongdoing against Caucasian teachers…" *Id*. Plaintiff further alleges that similarly situated Caucasian teachers were not disciplined, investigated or fired for

more egregious" offenses nor were the terms of their employment "negatively impacted." Plaintiff also contends that Plaintiff was "not provided access to the resources necessary to adequately perform his job, and his requests for these resources were repeatedly ignored." *Id.*

A.   **Failure to Exhaust**

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. A plaintiff who wishes to bring Title VII claims in federal court must first exhaust administrative remedies with the EEOC. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). That is, before seeking judicial relief, Title VII plaintiffs are required to file a charge of discrimination with the EEOC within **180 days** of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1). Here, Plaintiff contends discrimination occurred when he was suspended for 2 days on October 15-16, 2015. Nevertheless, Plaintiff failed to timely submit an EEOC claim inasmuch as he submitted his claim to the EEOC on April 27, 2016—some 14 days after the expiration of the 180 day deadline of April 13, 2016. *EEOC Charge*.  As a result, any claim under Title VII pertaining to Plaintiff's 2 day suspension is time barred.

In addition, according to Plaintiff, he was constructively discharged on June 30, 2016 when he resigned. *Compl.* ¶ 23. Plaintiff never submitted an amended EEOC charge regarding his alleged "constructive discharge," thus, he has failed to exhaust his administrative remedies as to any claim pertaining to the same.

B.    **Race Discrimination**

Even had Plaintiff timely filed his EEOC charge, the claim is meritless. Plaintiff's Title VII race discrimination claim is analyzed under the burden shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Under this scheme, a plaintiff must first establish a prima facie case of discrimination by showing: (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class." *Id*. at 720. If a plaintiff makes a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If the defendant produces such a reason, the plaintiff must demonstrate that the defendant's proffered reason was a pretext for discrimination. *Id*.

Here, Plaintiff is a member of a protected class and was qualified for the position of teacher. However, Plaintiff fails as to the other elements.

1.    **Adverse Employment Action—2 Day suspension**

Plaintiff claims that his 2 day suspension was an adverse employment action. However, such a suspension is not an adverse employment action. *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331–32 (5th Cir. 2009); *Brown v. City of Syracuse*, 673 F.3d 141, 144 (2d Cir. 2012); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004)(suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action). An adverse employment action must consist of an ***ultimate employment decision***, such as "hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764

15

F.3d 500, 503 (5th Cir. 2014). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id.*; *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 644 (W.D. Tex. 2014).

Here, while the LCSD upheld Plaintiff's 2 day suspension, he admits that he was paid for the same. *Pl. Depo.*, at 102-103.  This fact disqualifies the same as an adverse employment action.

### 2.   Adverse Employment Action—Constructive Discharge

Plaintiff also contends that he suffered an adverse employment action by being "constructively discharged." To prove constructive discharge, Plaintiff must show that a reasonable person in his shoes would have felt compelled to resign. *Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295, 301 (5th Cir. 2001).  Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but courts must consider the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not." *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir. 1994).

Here, Plaintiff provides no competent summary judgment evidence of any of the above. He was not demoted, his salary was not reduced, his job responsibilities were not reduced, he as not assigned menial or degrading work, he was not assigned to work for a younger supervisor and was not offered early retirement. *Fairburn Aff.* ¶7.

Plaintiff's deposition reveals that he must is relying on alleged "badgering, harassment or humiliation" intended to encourage him to resign. In particular, Plaintiff asserts that when he was initially called to the office to discuss the incident—on October 6, 2015—he felt intimidated. *Pl. Depo.*, at 86. Plaintiff explained that the chairs in the office were "angled towards [him]" and he was "in front of the firing squad or something like that." *Id*. Plaintiff also testified that Turner and Oakes' attitudes were "mean" and "angry'ish." *Id*. at 87.  Plaintiff tried to further explain by stating that Turner and Oakes tone of voice and mannerisms were "real sharp." Plaintiff testified that Oakes "wasn't very nice to him." *Id.* at 122. He gave an example of the type of intimidation he suffered by likening it to giving a child a sucker and then saying "Do you want that sucker right there? I think you should give it to me." *Id.* at 124. Notably, Plaintiff admits that Oakes was always "sharp" and "snappy" with him. Plaintiff admits that neither Turner nor Oakes physically threatened him during the meeting. *Id*. at 88-90.

Plaintiff also testified that when he was handed the letter putting him on paid administrative leave, Oakes reiterated the contents of the letter by stating that he could not be on campus during the investigation. *Id*. at 90; *Letter*.  The Letter in question stated that during the investigation Plaintiff was "not to return to any" LCSD campus "except as may be necessary to attend to your own children, until further notice." *Letter.* Plaintiff contends that Oakes reiterated the guidelines of the letter by stating that if he was seen on campus it was "not going to be good until" the investigation was complete. *Id*. at 90.

17

Plaintiff also points to when he gave notice that he wanted a public hearing. He alleges Principal Turner called him to the office to discuss the hearing. *Pl. Depo.*, at 112. According to Plaintiff, Turner informed him that he had seen Plaintiff had asked for a hearing and informed him that he had "seen these things go on for years." *Id*. at 115. He then stated that "it is nearly impossible to fight these things" and said he was just letting him know this as a friend. *Id*. at 115. Turner also allegedly told him that as "a friend, if you do this, it is going to be costly and it may not pan out the way you want it to be. It could make things worse." *Id*. at 115.

Plaintiff further alleges that he suffered harassment about who was representing him at the hearing. In particular, Plaintiff asserts that he was called to the office around November 2, 2015 and that Turner, Ms. Oakes and Superintendent Fairburn were present. *Id*. at 121. Oakes purportedly said to him that they knew he had changed attorneys and the LCSD had been advised by their attorney—Jim Keith—to find out who Plaintiff's new attorney was. *Id.* Plaintiff testified that he informed the LCSD officials that his attorney would "be in contact with" the District's attorney shortly but did not name his attorney. *Id*. Oakes said that they "needed to know who" Plaintiff's attorney was and he repeated his statement that his attorney would be with their attorney shortly. *Id*. at 122. Plaintiff alleges that Oakes then slammed a letter down in front of him which indicated the District had been advised to obtain the number of his new attorney and asked that he sign it. *Id*.; *February 2, 2015 Letter*. Plaintiff contends that Oakes was "snappy" and her conduct was uncalled for. *Pl. Depo.*, at 122-123.

Finally, Plaintiff appears to have felt harassed when LCSD officials attempted to obtain the IPad once his administrative hearing began. In particular, after Plaintiff's wife returned the IPad in October, 2015, the IPad was subsequently given back to Plaintiff. After one of the hearings, LCSD employee Jeff Quinn asked that Plaintiff return the IPad. *Pl. Depo.* at 128. Plaintiff said he could not return it because he was "not sure…who it belong[ed] to." *Id*. Quinn asked if the IPad was at the school and when Plaintiff said no, Quinn allegedly told him that Fairburn told him that if Plaintiff did not have the IPad on him he was to follow him to his house to obtain it. *Id*. at 128. Plaintiff told him that he did not care what Fairburn told him Quinn was not following him to his house. *Id*. at 129. Quinn did not follow Plaintiff home.

The above allegations, even if taken as true, are simply insufficient to demonstrate a constructive discharge. Plaintiff's employment with the LCSD was not terminated. In fact, Plaintiff preempted a possible ultimate employment decision when he resigned. *Mattern v. Eastman Kodak Co*., 104 F.3d 702, 709 (5th Cir. 1997), abrogated by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, (2006). Plaintiff was not physically or verbally threatened. His claims rest on the allegation that Ms. Oakes was "snappy" with him and "mean to him." This is simply insufficient to amount to a constructive discharge.

### 3.  Legitimate Basis for 2 day suspension

Even could Plaintiff establish a prima facie case, the LCSD has produced a legitimate, non-discriminatory basis for the suspension[3]. Plaintiff's suspension arose out of the IPad video incident. While no inappropriate video was discovered, there was credible, consistent information from students that they had seen inappropriate content on the IPad which was kept solely in Plaintiff's possession. *Pl. Depo.*, at 36-37. Furthermore, Plaintiff's handling of the incident was wholly inappropriate in that he failed to report the "rumors" about the IPad to any LCSD administrator. *Pl. Depo.* 58; *Hrg. Tranc. Vol. III,* 105, 110-111; *Fairburn Aff.*¶ 4. In fact, Plaintiff did not believe he needed to report the rumors and only discussed them with LCSD administrators when they found out about the same via another teacher. Rumors about obscene material being viewed on an IPad within the control of a single teacher are nothing the District takes lightly.  Such rumors should have been reported immediately so that the LCSD could have undertaken an independent investigation without Plaintiff's involvement. *Id.* Making certain that students are intimidated during such an investigation is vital to seeking the truth and, furthermore, is vital to ensuring that students and parents understand that a neutral, objective investigation is undertaken.  Regardless of whether or not Plaintiff actually tried to taint the students' testimony, immediately reporting the rumors would have allowed the school to interview the students prior to Plaintiff and would have ensured there was no appearance of impropriety. To this day, Plaintiff feels

---

[3] As previously noted, the paid suspension was not an "adverse employment action;" however, for the sake of argument this section presumes it was.

that he had no need to report the conduct because the students in question were disciplinary problems and trouble makers. *Pl. Depo.* at 58; *Hrg. Tranc. Vol. III*, 105, 110-111.  Plaintiff's failure to report the rumors alone is sufficient grounds to suspend him. *Fairburn Aff.* ¶ 4.

In addition, the fact that Plaintiff actually undertook his own investigation of the matter was very troubling to the LCSD. Plaintiff admittedly took 4 students out of his class and individually marched them across the hall to another classroom to interrogate them. *Fairburn Aff.* ¶ 5. Plaintiff not only left his classroom unsupervised during his investigation but he had no administrator with him while he questioned each student by themselves.  This is a violation of the Mississippi Educator Code of Ethics. *Id.*; *Ethics*, 1.2(e).  The students questioned reported to administrators that they felt intimidated by Plaintiff and later felt like he retaliated against them.   See, *Student Statements.* Segregating a minor and subjecting them to questioning with no other teacher or administrator present would certainly be intimidating for the minor. The mere fact that a teacher isolated a student in a laboratory, away from fellow students and administrators, to question the student about rumors involving himself is grounds for a suspension. *Fairburn Aff.* ¶ 5.

Significantly, during his "investigation" Plaintiff left his Earth Sciences class unattended. *Pl. Depo.*, 78-81. Plaintiff admits that he walked across the hall, through the Lab door and left no teacher in charge of his class. *Id.*  This was a class which Plaintiff testified contained students with "horrible dispositions" who liked fighting and agitating people. *Id.* at 58.  Plaintiffs leaving his class wholly unattended such that he

could take the students across a hallway into a Lab to question them was wholly unacceptable and put student safety at risk, not to mention the loss of classroom time. This was a violation of the Code of Ethics. Again, even singularly, this was sufficient grounds to suspend Plaintiff for two days. *Fairburn Aff.* ¶ 6.  In summary, the record evidence reveals that Plaintiff has failed to demonstrate a prima facie case of racial discrimination here and, even had he done so, the LCSD has provided a legitimate non-discriminatory basis for the suspension[4].

**C.     Hostile Environment**

Plaintiff alleges that he was subjected to a racially hostile environment at the LCSD. *Compl.*  To prevail on a hostile environment claim, Plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yello Transp., Inc.,* 670 F.3d 644, 651 (5th Cir. 2012)(quoting *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002)).

A work environment is hostile when it "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)(quoting *Harris v. Forklift Systems, Inc.,*

---

[4] Notably, Plaintiff resigned his employment with the District, therefore, he has not suffered an adverse employment action which necessitates any legitimate non-discriminatory showing by the LCSD.

510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In other words, Plaintiff must show that his workplace environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that [he] in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). To make this determination, a court must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787–88. Notably, Title VII "is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir. 1981).

Here, Plaintiff has failed to adduce proof that he was subjected to any racially-tinged work place.  There is no evidence that Fairburn, Turner, Collins, or Oakes ever used racially derogatory terms in the presence of Plaintiff or even outside the presence of Plaintiff. *Fairburn Aff.* ¶ 8.   He was never threatened with physical harm or humiliated.  Plaintiff's evidence is that Oakes was always "snappy" with him or "mean to him" which falls far short of the evidence required to demonstrate a hostile environment. The legal standard for workplace harassment is "high." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 509 (5th Cir. 2003). Title VII is not meant to be a civility code and one employee's "snappiness" towards another is insufficient. *Rudkin v. Roger Beasley Imports, Inc.,* No. A-17-CV-849-LY, 2018 WL 6271995, at *4 (W.D. Tex. Nov. 30, 2018).

**IV.     TITLE VII — RETALIATION (OFFICIAL CAPACITY ONLY)**

The legal standard for Title VII retaliation claims essentially mirrors the burden-shifting framework for race discrimination claims. To make out a prima facie case of retaliation, Plaintiff must show that he: 1) engaged in a protected activity; 2) an adverse employment action followed; and 3) there was a causal connection between the activity and the adverse action. *Aryain v. Wal–Mart Stores Texas LP,* 534 F.3d 473, 484 (5th Cir. 2008); *Harrington v. Harris*, 108 F.3d 598, 603 (5th Cir. 1997). Notably, an employee has engaged in protected activity under Title VII if he has (1) "opposed any practice made an unlawful employment practice by this chapter," or (2) "made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "If the plaintiff is successful in making a *prima facie* showing, then the burden shifts to the employer to articulate a legitimate non-retaliatory reason for its employment action."*Aryain*, 534 F.3d, at 484.

**1.   Protected Activity**

Protected activity means (1) opposing an unlawful employment practice, or (2) making a charge under Title VII, or testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII. *Douglas v. DynMcDermott Petroleum Operations Co.,* 144 F.3d 364, 372 (5th Cir. 1998). "To satisfy the protected activity requirement, an employee must oppose conduct made unlawful by Title VII; complaining of unfair or undesirable treatment not addressed by Title VII will not suffice." *Richard v. Cingular Wireless* LLC, 233 F. App'x 334, 338 (5th Cir. 2007).

Here, the only possible protected activity is Plaintiff's allegation in his Complaint that he complained to the defendants about a "plague of discriminatory conduct." *Compl*. ¶ 11. More specifically, Plaintiff contends that LCSD is "plagued with acts of racial discrimination that are utilized to quiet African-American teachers through real and perceived threats to their livelihood." *Id*. Plaintiff also asserts that he "provided notice of these inequities to" the defendants and to the "board as well." *Id*. at ¶ 14. Plaintiff also alleges that in September, 2015, he complained to Turner that the District's hiring practices were "discriminatory and that the Defendants administration of punishment towards his African American son[5] was discriminatory." *Id*. at ¶ 15. However, when asked at his deposition about the language of the Complaint and any supporting facts, Plaintiff failed to specify and/or substantiate any of the above allegations. Plaintiff made allegations in his Complaint but when asked at his deposition about the "plague of discrimination" for which he suffered retaliation Plaintiff failed to provide any information supporting the same. These unsubstantiated allegations do not amount to a prima facie case.

Plaintiff did, however, mention several incidents which he believes support his allegations for retaliation for a protected activity. First, Plaintiff stated that he was threatened by the Quin regarding the retrieval of the IPad; that Mike Davis threw a chair against his desk because he was angry with him[6]; and Oakes comments about him not coming back to campus until he was notified the investigation was completed. *Pl.*

---

[5] Plaintiff admitted at his deposition that he did not have a son; rather, the student in question was his Godson.

[6] Plaintiff contends this conduct occurred in 2011 or 2012 and, thus, it may not be considered as it is time barred.

*Depo.* at 23, 127-130.  None of the above allegations constitute protected activity and, therefore, they cannot substantiate a retaliation claim.

### 2.  No Causal Connection.

Even if Plaintiff could demonstrate that he engaged in a protected activity, he still cannot demonstrate a causal connection to his suspension or "constructive discharge." For there to be a causal connection, the employer must know about the employee's protected activity. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). Temporal proximity between the protected activity and the adverse employment action, by itself, is insufficient to create a genuine issue of material fact as to causation. *Abbood v. Texas Health & Human Servs. Comm'n*, No. 4:17-CV-909-A, 2018 WL 6267925, at *5 (N.D. Tex. Nov. 30, 2018).  Once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, plaintiff must offer some evidence from which to infer that retaliation was the real motive. *McCoy v. City of Shreveport,* 492 F.3d 551, 562 (5th Cir. 2007).

There is absolutely no evidence to support the allegation that Quinn's seeking to gain possession of the IPad was in any way connected to the Plaintiff's two (2) day suspension. The reason for this is simple—Quin asked for the IPad on February 16, 2016--long after Plaintiff's suspension in October 2015. *Hrg. Trans. Vol. III*, 28.

Next, as for Plaintiff's allegations regarding a chair being thrown at him, he testified that the same occurred in 2011 or 2012. *Pl. Depo.*, at 130. According to Plaintiff, in 2011 or 2012, Davis wanted him watch a classroom only to then became angry with Plaintiff and throw a chair at his desk. *Id.* at 23. There is no evidence that this incident

was in any way causally connected to Plaintiff's suspension. Furthermore, a period of even 5 months "is not the kind of 'very close' temporal proximity that has been recognized as providing sufficient evidence of causality" much less several years as is the case here. *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 47 (5th Cir. 2011).

Finally, as to Oakes statements reiterating that he should not come back to campus during the pendency of the investigation into the IPad incident, there is no evidence that this was in any way connected to the two (2) day suspension Plaintiff received.

### 2.  Legitimate Non-Retaliatory Reason for Employment Action

Finally, even could Plaintiff make out a prima facie case of retaliation under Title VII, the moving defendants have provided substantial evidence to show Plaintiff was suspended, not in retaliation for any protected activity, but based on credible information from students about obscene material, his leaving a classroom unattended, following an investigation into the matter by interrogating students in the absence of an adult or administrator, and Plaintiff's failure to immediately communicate rumors to the District.  As such, Plaintiff's retaliation claim fails.

### V.  RACIAL DISCRIMINATION—42 U.S.C. §§ 1981 AND 1983

#### A.  Section 1981.

Plaintiff also contends that he suffered discrimination in violation of 42 U.S.C. § 1981. Plaintiffs alleging discrimination under § 1981 must establish three elements: "(1) they are members of a racial minority; (2) [d]efendants intended to discriminate on the

basis of race; and (3) the discrimination concern[s] one or more of the activities enumerated in [§ 1981]." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Making and enforcing contracts is an enumerated activity under § 1981. 42 U.S.C. § 1981(a) (2012). This activity "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). *White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, No. 3:17-CV-1158-K, 2018 WL 4488843, at *4 (N.D. Tex. Sept. 19, 2018).

Here, Plaintiff is African American and, thus, is a member of a racial minority; however, he has failed to put forth competent summary judgment evidence that the LCSD intended to discriminate against him based upon his race. Rather, the record in this matter demonstrates that Plaintiff was investigated based on student allegations, as would be any other teacher, regardless of race, who allegedly allowed students to view inappropriate material, left their classroom unattended, and personally interrogated students in the absence of any other administrator. *Fairburn Aff.* ¶ 5. Furthermore, Plaintiff was suspended for two (2) days (*with* pay) as a result of the investigation—that is all. This suspension is insufficient to have interfered with Plaintiff's contract. Therefore, Plaintiff's claim fails.

Moreover, both Fairburn and Turner are entitled to qualified immunity here. "Public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). A public official is entitled to the cloak of

qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994). In assessing a claim of qualified immunity, courts apply a two-part analysis. The threshold question is "whether Plaintiff's allegations establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001). However, "if a violation could be made out, the next sequential step is to ask whether the right was clearly established." *Id.* at 201. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id.* at 202. Here, there is no evidence that Turner or Fairburn discriminated against him in violation of Section 1981 or that their conduct in recommending a suspension was objectively unreasonable based on the IPad investigation.

In addition, to prove liability against the LCSD, Plaintiff must establish that his alleged discrimination was the result of a policy, practice or custom. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). There is no such evidence here.

**B.    Section 1983.**

Plaintiff's racial discrimination claims under Section 1983 fails for the reasons stated in Section III hereinabove. In addition, both Fairburn and Turner are entitled to qualified immunity. Here, neither Fairburn nor Turner was the final decision maker as

to Plaintiff's suspension; rather, the LCSD Board of Trustees was.  See, Miss. Code. Ann. § 37-9-59;  *Sturgis v. Copiah Cty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *4 (S.D. Miss. Sept. 15, 2011)(the school board is the sole policymaker for school districts in Mississippi).

Regardless, it was not objectively unreasonable to suspend Plaintiff based on the results of the IPad investigation. For a right to be clearly established the "contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012). An official's conduct is objectively reasonable unless "*all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001); Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). If reasonable public officials could differ on the lawfulness of Defendants' actions, Defendants are entitled to qualified immunity. *Robin v. City of Frisco, Texas*, No. 4:16-CV-00576, 2017 WL 5483883, at *17 (E.D. Tex. Nov. 15, 2017). The issue is an "whether a reasonable officer could have believed" that he was violating a person's constitutionally protected rights under the circumstances of the complained-of. *Id*.

Here, the investigation into the IPad incident revealed several instances of misconduct which Turner and Fairburn objectively believed gave a basis for Plaintiff's suspension. Certainly, it cannot be said under these circumstances that all reasonable

officials would have believed the suspension under this set of facts was a violation of Plaintiff's Constitutional rights. The fact that an independent hearing officer heard the evidence here and upheld the suspension is clear evidence that the suspension was objectively reasonable.

Finally, there is no *respondeat superior* liability under Section 1983; rather, the key to municipal liability is demonstrating that the deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. See *Thomas v. Prevou,* 2008 WL 111293, *3 (S.D. Miss. 2008). The policy must be maintained with "objective deliberate indifference" to a constitutionally protected right. *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002).  Importantly, a municipality acts with objective deliberate indifference if it promulgates a policy or custom despite the "known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 567. Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability.  *Id.* at 579.

There is no such evidence here and Plaintiff's claim fails as the LCSD as well.

## VI.    FIRST AMENDMENT RETALIATION—42 U.S.C. § 1983.

Plaintiff alleges he suffered a First Amendment violation inasmuch as he allegedly complained to defendants about discriminatory practices and failure to comply with a federal consent decree. In particular, Plaintiff contends that he challenged the alleged "discriminatory practices" of the LCSD yet Fairburn and Turner attempted to chill that speech. Plaintiff also alleges that the LCSD took photographs of individuals "who complained of discrimination at school board meetings." *Compl.* ¶ 64-68. Furthermore, Plaintiff alleges that a LCSD employee named Corey Keyes, an administrator at the middle school, told individuals that there was this "thing called Rise on FaceBook" and that "if your name is on Rise," Fairburn was "keeping a note" of it. *Pl. Depo.*, at 117-118.

To prevail on a First Amendment retaliation claim under Section 1983, Plaintiff must establish that: (1) he suffered an adverse employment action, (2) he spoke as a private citizen; (3) his speech involved a matter of public concern, (4) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting the efficient provision of public services and (5) his speech was a substantial or motivating factor behind the defendant's actions. *See*, *Gibson v. Kilpatrick,* 734 F.3d 395, 400 (5th Cir. 2013).

### A.    Adverse Employment Action

Plaintiff must demonstrate that he has suffered an adverse employment action. Employer actions that can result in liability include discharges, demotions, refusals to hire, refusals to promote, and reprimands as well as transfers which may serve as

demotions. *Moreau v. St. Landry Par. Fire Dist. No. 3*, No. CV 6:18-00532, 2018 WL 6441759, at *2 (W.D. La. Dec. 7, 2018). Plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which means it well might have dissuaded a reasonable worker from engaging in the protected conduct. *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006); *Russell v. Goodwin*, No. 10-CV-0150, 2012 WL 279653, at *8 (W.D. La. Jan. 30, 2012). Here, Plaintiff was suspended for 2 days based on the misconduct that occurred with the IPad incident. This paid suspension was, at worst, a reprimand but should not be considered an adverse employment action.

### B.   Protected Speech

Plaintiff's Complaint contends that he spoke to Turner and Fairburn about racial discrimination against African-American teachers and their refusal to comply with a federal consent decree. *Compl.* ¶ 15. However, Plaintiff has failed to even specify when he spoke to the defendants, where he spoke to them and the contents of his statements. Simply put, Plaintiff has failed to put forth evidence to substantiate this allegation and, thus, his claim fails.

### C.   Speech was not a substantial or motivating factor.

Finally, there is no competent evidence that proves Plaintiffs vague notification about discrimination in the District was a substantial or motivating factor for his being suspended. To the contrary, Plaintiff has not even offered a time line to establish temporal proximity, much less actual evidence that his alleged statements to the defendants were a substantial or motivating factor in his being suspended for 2 days.

As articulated above, Plaintiff was suspended for misconduct related to the IPad incident including interrogating students one on one, failing to supervise his class and failing to notify the District of the rumors of indecency.  Significantly, it is clear that Plaintiff would have been suspended regardless of any speech based on the misconduct revealed in the IPad investigation. *Fairburn Aff.* ¶ 4-7; *Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000).

Both Fairburn and Turner are entitled to qualified immunity as to this claim. As previously noted, "[p]ublic officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001).  Here, neither Fairburn nor Turner was the final decision maker as to the Plaintiff's suspension. See, Miss. Code. Ann. § 37-9-59; *Sturgis v. Copiah Cty. Sch. Dist.,* No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *4 (S.D. Miss. Sept. 15, 2011).  Previously, numerous Fifth Circuit cases instructed that only final decision makers may be found liable for First Amendment retaliation. *Smith v. City of Madison, Mississippi*, No. 3:18CV18-LG-RHW, 2018 WL 5928248, at *3 (S.D. Miss. Oct. 23, 2018). However, in *Sims v. City of Madisonville,* 894 F.3d 632, 640 (5th Cir. 2018), the Fifth Circuit clarified that those other than final decision-makers may be held liable for First Amendment retaliation employment discrimination. Nevertheless, the *Sims* Court expressly found that while it clarified that a non-policymaker could be held liable for retaliation, the same was not "clearly established" until the Sims decision in June, 2018. This clarification occurred

well after the suspension in question and, thus, the defendants are entitled to qualified immunity.

Again, the District has no liability here as Plaintiff has failed to establish any violation was a policy, practice or custom of the District. the key to municipal liability is demonstrating that the deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).

## V.     STATE LAW—BREACH OF CONTRACT VIA POLICIES

Plaintiff contends that the LCSD breached his employment contract by breaching portions of its Personnel Policy Handbook. *Compl.* ¶ 58. In particular, Plaintiff alleges that the District breached its policy prohibiting discrimination, provided different due process protections from bullying to Plaintiff as compared to Caucasian employees, allowed students to sexually discriminate, failed to support teachers with respect to disciplinary matters and failed to provide him with a fair and impartial hearing regarding his suspension. *Id*. 58-60.

In a breach of contract claim, a plaintiff must prove by a preponderance of evidence: (1) the existence of a valid and binding contract, (2) the defendant has breached the contract, and (3) the plaintiff has been damaged monetarily. *Warwick v. Matheney*, 603 So.2d 330, 336 (Miss.1992).

Here, Plaintiff was a certified teacher contracted to teach for a calendar year. *Contract*. However, Plaintiff has failed to provide evidence that the LCSD breached his employment contract or that he suffered monetary damages as a result thereof.

A.  **Discrimination**

The LCSD has an equal opportunity employment clause in its Personnel Manual**.** In particular, that policy states that the LCSD "shall not discriminate in its policies and practices with respect to compensation, terms or conditions of employment because of an individual's race…" *Eq. Op. Policy*. As noted above, Plaintiff has failed to demonstrate that he was subjected to discrimination based on his race and, as such, this claim fails. Furthermore, Plaintiff has failed to demonstrate that he suffered monetary damages as his suspension was paid.

B.  **Bullying**

Plaintiff claims that he was bullied and treated differently than Caucasian teachers who were bullied. Plaintiff testified that E.B. and Q.J. bullied other students but the only testimony he give regarding his being bullied is that an unidentified "kid…kept saying Mrs. Brookins…," saying "Ma'am? Ma'am," and stating "[t]hat's Ms. Brookins." *Hrg. Trans. VIII*, at 65, 171. *Id*. This is clearly insufficient to state a claim.

The LCSD's "Bullying" policy states that the District prohibits the same and then defines bullying as to teachers states that "any pattern of gestures or written, electronic, or verbal communications, or any physical act or any threatening communication, or any act reasonably perceived as being motivated by any actual or perceived differentiating characteristic that… places a…school employee in actual and reasonable fear of harm to his or her person or damage to his or her property…" *Policy JDDA-Bullying*.  The allegations above do not amount to a pattern and certainly would not put a person in "reasonable fear of harm."  Plaintiff has also failed to provide competent

summary judgment that he reported this alleged conduct to the District. *Fairburn Aff.* ¶ 10. This claim fails.

C.    **Allowing students to sexually discriminate**

Plaintiff's Complaint asserts that the District breached his employment contract by allowing students to sexually discriminate against him.   *Compl.* ¶ 60. However, Plaintiff has provided no evidence of sexual discrimination by students against him. The only information put forward is Plaintiff's claim that students sometimes called him "Ms. Brookins" as opposed to "Mr. Brookins" and responded to Plaintiff by saying "Ma'am." *Hearing Transc., VIII,* at 171.   Clearly, this allegation, if true, is insufficient to amount to sexual discrimination. Furthermore, there is no competent summary judgment evidence that Plaintiff reported this incident to the LCSD. *Fairburn Aff.* ¶ 10.

D.    **Failure to support regarding disciplinary matters**

It appears that Plaintiff contends that the LCSD failed to support him regarding disciplinary matters based on his allegation that E.B. and Q.J. were difficult students. Plaintiff has testified that the two students are the "main two discipline problems." *Hrg. Trans. VIII,* at 64.   Plaintiff asserts that E.B. and Q.J. are "very defiant and disrespectful." *Id*.   Plaintiff gave an example of this behavior by indicating on an occasion he asked E.B. to "[p]lease have a seat" and E.B. responded by saying "[n]ot right now. I'm not ready. Not yet. I'll sit down when I want to." *Id*. at 63.

However, Plaintiff has admitted that when he sought assistance from administrators at the LCSD regarding the two students they responded. In particular, Plaintiff has given sworn testimony that he asked Mr. Collins to "come in and kind of

mediate the situation" and that Collins did so. *Id.* at 66. Plaintiff testified that when he saw that he could not control the two students "Mr. Collins came down and tried to mediate the situation and kind of see if they were going to, you know, do better and adhere." *Id*. Significantly, Plaintiff was unsure if he had even written up E.B. or Q.J.—a standard disciplinary process—before the rumors pertaining to the IPad. *Id*. at 67, 117. Rather than send the students through the disciplinary process by writing them up, Plaintiff utilized classroom discipline rather than invoke the powers of the administration. *Id*. at 67-68.  There is no evidence that Plaintiff sought the assistance of the LCSD and was denied the same; rather, he admits that when he asked Mr. Collins to step in, Collins did so. This claim fails.

### E.   <u>Failure to Provide Impartial Hearing</u>

Plaintiff contends that the LCSD breached its policy regarding providing an impartial hearing regarding his suspension; however, it is clear that Plaintiff was given a multi-day hearing before a hearing officer at which he was represented by counsel and was able to offer testimony and cross-examine witnesses. There is no evidence that Plaintiff was not provided this hearing as the transcript provides irrefutable evidence of the same. This claim fails.

## VI.   CONSTRUCTIVE DISCHARGE

Plaintiff also contends that he has suffered a constructive discharge under state law; however, there is no proof of the same. A constructive discharge occurs under state law when an "employer [has] made conditions so intolerable that the employee

38

reasonably [feels] compelled to resign." *Alston v. Mississippi Dep't of Employment Sec.*, 247 So. 3d 303, 310 (Miss. Ct. App. 2017).

There is simply insufficient evidence here that the LCSD made Plaintiff's conditions of employment so "intolerable" that he felt compelled to resign. See, Arguments above.

## VII.   Libel/Slander

Finally, Plaintiff alleges claims for libel and slander. The LCSD cannot be held liable for either claim as the MTCA bars the same. In particular, Section 11-46-5 of the MTCA provides a political subdivision shall "not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, **libel, slander**, defamation or any criminal offense other than traffic violations." Miss. Code Ann. § 11-46-5.

The MTCA does not apply to Superintendent Fairburn and Principal Turner in their individual capacities but those claims fail as well. The tort of libel pertains to written defamations and to establish a claim for libel, Plaintiff must demonstrate: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Funderburk v Johnson,* 935 So.2d 1084, 1104, 1101 (Miss. Ct. App. 2006). Here, Plaintiff has failed to provide competent summary judgment evidence that either Fairburn or Turner made any such written statement to a third party. In fact, Plaintiff clearly has no knowledge of any such

statements, has not produced the same and admits that he only has a "reasonable belief that Defendants have each ratified…in writing" and published false information concerning Plaintiff to former co-workers, parents and members of the community, that Plaintiff was incompetent, abusive, and sexually indecent towards children…" *Compl.*¶ 70. Plaintiff fails to provide competent evidence that Fairburn or Turner communicated any such information to a third party in writing. *Fairburn Aff.* ¶ 11. In addition, the information relayed during the administrative hearing was based on a reasonable investigation that included interviewing the children in question, taking written statements and interviewing Plaintiff. The investigation negates the fault element of a libel claim. The lack of evidence here is fatal to this claim.

Slander is a verbal defamation. *Funderburk*, 935 So. 2d at 1101. To establish a claim for slander, Plaintiff must similarly demonstrate (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Funderburk v Johnson, 935 So.2d 1084, 1104 (Miss. Ct. App. 2006).* As is the case for the libel claim, Plaintiff has provided no competent summary judgment evidence which establishes that either Fairburn or Turner verbally published false or defamatory statements about him.

## CONCLUSION

For the reasons stated hereinabove as well as in Defendants Motion for Summary Judgment, all claims in this matter must be dismissed.

**DATE:**        **January 22, 2019.**

                                        Respectfully submitted,

                                        **LAWRENCE COUNTY**
                                        **SCHOOL DISTRICT,**
                                        **TAMMY FAIRBURN, AND**
                                        **DARRYL TURNER**

                                        BY:    _/s/William R. Allen_
                                               One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
KATELYN A. RILEY (MSB #105115)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS 39602-0751
Tel. 601-833-4361
Fax 601-833-6647
Email: wallen@aabalegal.com
Email: kriley@aabalegal.com

## <u>CERTIFICATE</u>

I, the undersigned, of Allen, Allen, Breeland & Allen, PLLC, hereby certify that I filed the foregoing Memorandum of Authorities in Support of Motion for Summary Judgment with the Clerk of Court via the ECF system which gave notice to the following:

E. Carlos Tanner, III, Esq.
TANNER & ASSOCIATES, LLC
P. O. Box 3709
Jackson, MS 39207
carlos.tanner@thetannerlawfirm.com

Volney Brand, Esq. - PHV
BRAND LAW, PLLC
5001 Spring Valley Rd., Suite 400E
Dallas, TX 75244
volney@brandlaw.us.com

This the 22nd day of January, 2019.

/s/*William R. Allen*
OF COUNSEL