STATE OF MISSISSIPPI

COUNTY OF OXFORD

## AFFIDAVIT

Personally, appeared before me the undersigned authority, in said county and state, Jason Brookins, who after being duly sworn states on oath as follows:

1. I, Jason Brookins, am of the age of majority and competent to testify about the matters stated herein and make this affidavit having full personal knowledge of the facts contained herein.

2. I was employed as a teacher for the Lawrence County School District ("LCSD" or "the District"), and I was employed in that capacity at all times relevant to the Complaint.

3. I was employed as a teacher for the LCSD during the 2015-2016 school year. During this time, I was retaliated against and discriminated against by the Defendant's listed in the Complaint.

4. Throughout my tenure with the District, I witnessed members of the community and African American teachers complain to the Lawrence County School Board, Principal Darryl Turner, and to Fairburn about the racial discrimination that persists against African-American teachers' as well as the racial discrimination against African-American students without any steps taken to prevent this conduct. Based on my knowledge of the internal procedures at the Lawrence County School Board, and attendance at community meetings, I know personally that these complaints and lawsuits were presented to the Lawrence County School Board, Principal Darryl Turner, and to Fairburn about the repercussions that African Americans suffered after complaining about these inequities. I also provided such notice prior to being retaliated against by Turner, Fairburn, and Lawrence

County School District. And Fairburn and the District still refused to abide by a consent decree ordered by the United States District Court for the Southern District of Mississippi Hattiesburg Division to hire and retain black educators despite repeated complaints from African American members in the community. Also, during Fairburn's tenure, I witnessed the Lawrence County School Board repeatedly ratify or "rubber stamp" Fairburn's discriminatory and retaliatory actions launched against black teachers who were falsely accused of misconduct in order to encourage their resignations. When this method was unsuccessful, I witnessed the district fire black teachers out right based on racially motivated charges that arose under Fairburn.

5. On or about September 2015, I complained to principal Turner that I noticed Fairburn about the racially discriminatory practices of the LCSD. I informed that the district's hiring practices were racial discriminatory, they failed to follow the federal consent decree, as well as my concern about the well-being of my African-American godson due to the district's racial discrimination. No steps were taken by any member of LCSD to institute any changes. In fact, Fairburn and Turner failed to take any corrective steps to prevent the cause of actions listed in my Complaint, including those areas where they operated as final decision makers for the District for all the actions described therein except firing and teacher suspensions. No steps were taken by any member of LCSD's board to institute any changes.

6. Turner and Fairburn responded to these complaints with a campaign of racial harassment, retaliation, and discrimination.

7. Shortly thereafter, on or about October 2, 2015, I was accused by three students with known disciplinary problems who conspired to make specious claims that I had provided these students with a laptop containing obscene images.

8. Although the students had known disciplinary problems, and based on my previous experience with similar matters, Turner, Fairburn, and Twala Oakes escalated the rumors far outside the ordinary course of responding to these issues.

9. For example, Turner and Fairburn falsely accused and charged me with failing to report rumors to the administration, despite there being no such policy within the District. Fairburn also later admitted that she did not punish other Caucasian teachers who failed to report rumors

10. Turner and Fairburn falsely accused me of verbally intimidating students with no proof and no complaints of me even raising my voice and told me that it was "possible" that I had done so.

11. The notion that I didn't supervise was bizarre because I followed Fairburn, Turner, and the district's preference that I question the students in the manner taken which led to my suspension. The teachers, including myself, were allowed to use student monitors to briefly address a disciplinary concern if necessary and this was the action that I took. The state guidelines also mandated that I take steps such as this to avoid embarrassing the kids. Again, this approach and the charges were different than what had ever been taken against any Caucasian teacher based on my circumstances or any other teacher. More importantly, Turner, Fairburn, and LCSD charged me with failure to supervise when my method and approach to questioning the students was consistent with the district's guidelines and their punishment basis was different than what had ever been implemented during my tenure against Caucasian teachers.

12. The district and Fairburn also charged me with providing the children with a personal ipad although it was listed as a part of the district's own inventory. They claimed I

violated the internet policy although there was no complaint of internet usage or proof of its access.

13. Turner and Fairburn suspended me and formally reprimanded me without hearing my version of events and again this was not in accordance with my experience or the district's approach based on the circumstances with respect to Caucasian teachers.

14. Despite access to all of these facts beforehand, Turner and Fairburn initially notified me that they were suspending me without pay, immediately placed me on administrative leave, later put me on a performance plan upon my return, and formally reprimanded me based on false charges that I provided students with a personal electronic device that contained explicit images although the analysis conducted by the District found that no such pornographic images were on the device. The approach taken based on word of mouth of students with known disciplinary problems and not even to see if there were inconsistencies was something I never witnessed before with Caucasian teachers who were subject to rumors. The district later decided to pay me for the suspension in the next check apparently in response to my complaint of suspension without pay being in contravention with the district's policy and procedures, but Fairburn indicated that she would take my benefits of personal leave instead during the suspension hearing and still suspended me despite my innocence and in contravention of the district's policies and procedures. Therefore, the suspension led to a loss of benefits and Fairburn admitted the district did not do this to any other member. I have attached a true and correct copy of the suspension letter marked as Exhibit A.

15. After I returned in October 2015, Turner and Fairburn responded to my stated intentions to expose the District's discriminatory practices and concerns about my godson with additional threats to fire me and make false reports of indecency to children unless I kept quiet about my previous complaints of discrimination.

16. On October 26, 2015, October 29, 2015 and December 3, 2015 Turner and Fairburn disallowed me from attending conferences or travelling within or out of the District.

17. Turner refused to process my office referrals for disruptive classroom behavior.

18. Upon my return to my classroom after my suspension on October 19, 2015-December 18, 2015, Turner "openly allowed" students to refer to me as "Mrs. Brookins" and he allowed them to disrupt the classroom.

19. Upon my return to my classroom after my suspension on October 19, 2015-April of 2016, Fairburn restricted internet access for my classroom only, no other teachers on the hallway were affected. I used the internet available in Ms. Bass and Mr. Daughtry's rooms if I needed to print out materials.

20. On February 16, 2016, Turner and Fairburn directed a member of the District to threaten to follow me home to my wife and kids as part of the District's investigation of me.

21. Turner and Fairburn interrogated me about my legal representation (November 2, 2015), they required me to pay for my own work-related travel (October 26, 2015, October 29, 2015 and December 3, 2015), they encouraged students to harass me (October 19, 2015-December 18, 2015), they refused me access to my employment records (November 2015), unreasonable demands with respect to grading papers after the sham investigation (October 15, 2015), and ignored bullying provisions with respect to myself (October 2, 2015, November 2, 2015, and February 16, 2016).

22. Turner responded to January 2016 complaints about my son's Caucasian teacher's performance which included allowing segregated classrooms, and discriminatory punishment, by threatening my wife's employment.

23. A District employee admitted at a due process hearing that Fairburn had tasked her with finding me guilty of a violation of District policy, rather than determining whether I was

guilty of a violation. At this hearing, my attorneys were not allowed to cross-examine the accusers, and the hearing officer emphasized that a discrimination case was not the purpose of the hearing and limited many questions.

24. Fairburn admitted at a due process hearing that there was actually no investigation during the District's investigatory period or during the suspension. She also admitted that similarly situated white teachers had engaged in more severe misconduct without any form of discipline. The investigation caused me humiliation as it naturally forced me to have to respond to why I was suspended and the community is so small that it was a natural consequence of taking these actions. It also substantiated the rumors of obscene material left in the hands of minors. The length of the so-called investigation also added to corroborate the allegations as well especially given LCSD did not take this approach given more credible allegations of wrongdoing by teachers. There were allegations of sexual misconduct by Caucasian teachers with students and this did not even occur. At the hearing Fairburn also indicated that I would lose benefits associated with the suspension including personal leave time.

25. As mentioned, following my complaints about discrimination to the district, I was denied travel (October 26, 2015), refused access to my employee records (November 2015), they interrogated me about my legal representation (November 2, 2015), I was frequented with interruptions and embarrassment during my instructional day(October 6, 2015, November 2, 2015, and February 16, 2016), denied internet access (October 19, 2015-April of 2016), prevented from attending conferences (October 26, 2015, October 29, 2015 and December 3, 2015), students who initially started the rumors and various others students throughout the school were encouraged to harass me by members of the District. When I brought these incidents to my superiors' attention, nothing was done to correct the student behavior. Instead, I was forced to pay out of pocket for expenses (October 26, 2015, October 29, 2015 and December 3, 2015),

and my wife was refused certain trainings (August 2015). Moreover, my suspension led to a loss of pay as I was forced to expend several personal days (February 11, 2016, February 12, 2016, March 3, 2016, March 4, 2016, March 31, 2016, April 1, 2016, and April 20, 2016) which resulted in a loss of net income.

26. I also witnessed several African-American teachers who were victimized by the district during Tammy Fairburn and her subordinate, Twyla Oakes' tenure. The district was aware of the discriminatory practices of these individual defendants as it had received repeated complaints and notices from both members of the community, teachers, and its own board members, including myself throughout my tenure. Keswic Alexander was a male African American teacher who was subjected to a bogus investigation following rumors that were spread about him. He was found of no wrong doing; however, when he spoke out against the District he was removed from his position at the middle school and placed at the alternative school by Fairburn. Roberta Johnson was a female African American teacher who was subjected to harassment by the District and Tammy Fairburn. Fairburn's actions caused her to resign; however, after Roberta left the District and found employment elsewhere, Fairburn reported her to the Sate causing Roberta to lose her employment at the new school and she lost her teaching license. Despite this knowledge, the board took no activity to curb any of the discrimination and retaliation. Id. In fact, the board delegated almost all the actions described in this suit to the superintendent, including the administration of the school, discipline, scope of investigations, pay deductions, issuance of reprimands, negative reporting to the state, administrative leave, and allocation of funds. The board in practice ratified the conduct of Fairburn with respect to ultimate employment decisions as well. In fact, in September 2016 board member Bridges informed me that the board received a directive from Fairburn to sustain the suspension of Plaintiff after it initially resisted even after I had resigned. The board had been made aware

during my complaints to it during the hearing regarding these discriminatory practices of Turner, Fairburn and Oaks as well and based on my experience within the district were noticed of the racial discrimination complaints made to Fairburn. Principal Turner had policy making authority concerning terms and conditions of employment including disciplinary support related to maintaining a classroom environment conducive to learning and the initiation of investigations.

28. Turner and Fairburn admitted during a due process hearing that they had engaged in an unnecessarily protracted "investigation." This ultimately served as a reminder of their intention to fire me if I did not resign voluntarily.

29. Based on my complaints about racial discrimination, and immediately following, I suffered many actions by Turner, Fairburn, and Oakes that had the effect of dissuading me from pursuing these concerns. I also felt compelled to resign as Fairburn had unchecked authority with the Lawrence County School District, I was subjected to false allegations by students whereas Caucasian teachers were provided blanket protection by Fairburn and the LCSB despite credible allegations of wrongdoing made by students and their parents, Fairburn threatened my ability to keep teaching if I continued to oppose LCD's discriminatory practices, was harassed by Fairburn's subordinates who reported participants such as myself for participating in the Civil Rights group Rise, which was designed to opposed LCSD's discriminatory conduct against African-Americans, witnessed the discrimination against my godson whereby Fairburn took no action nor administered punishment against the offending Caucasian teacher, endured my wife being retaliated against and discriminated against, including her not receiving equivalent pay as compared to her Caucasian counterpart teachers, denied basic disciplinary support in order to maintain the correct classroom decorum, and denied classroom tools which included internet access. I could ill afford to operate in an environment where my supervisor would utilize students to manufacture bogus charges, including those that involved sexual misconduct toward

children. The environment at LCSD permanently threatened my ability to work as a teacher and potentially my role as a father.

30. Just prior to my resignation I lost over 40 pounds, and I was treated for stress related disorders such as gastritis as well. I also received psychological counseling in order to combat the stress associated with Turner, Fairburn and the LCSD's retaliatory and discriminatory conduct.

31. Based on the foregoing events, I resigned and was replaced by a white teacher

32. Prior to filing my complaint, I provided the EEOC with notice of these complaints including my initial charge and a rebuttal in 2017 to Defendants' response, the fact that I had resigned due to the harassment and discrimination; and LCSD's contact with my future employer.

Further the affiant saith not.

_____
JASON BROOKINS

Sworn and subscribed before me this the 19TH day of February, 2019.

_____
NOTARY PUBLIC

My Commission Expires:

July 2, 2022





# LAWRENCE COUNTY SCHOOL DISTRICT
## TAMMY G. FAIRBURN
### SUPERINTENDENT OF EDUCATION

346 THOMAS E. JOLLY DRIVE – MONTICELLO, MS 39654-9301
TELEPHONE (601) 587-2506 – FAX (601) 587-2221

October 14, 2015

Dear Mr. Brookins:

Please be informed that the investigation of the accusations made against you has been completed.

Pursuant to the provisions of *Miss. Code Ann.* § 37-9-59, you are hereby notified that you are being suspended for 2 days for the following reasons:

- Your failure to protect students from having access to obscene electronic material (Standard 4.2.6). You also violated the Internet Acceptable Use Policy for the LCSD.
- Your failure to properly supervise students during the school day (Standard 1.2.5).
- Your attempt to verbally intimidate selected students (Standard 4.1.3).

Additionally, you failed to notify your immediate supervisors of the situation or of your repeated interrogation of students.

As a result, I have no alternative but to suspend you.

With the above noted, you are hereby suspended without pay from your professional duties October 15, 2015 through October 16, 2015.

Under the above statute, you are entitled to a public hearing on the charges made against you. You must request a hearing by delivering a letter to my attention at this office within five calendar days from this date. If I do not receive a written request from you for a hearing within five calendar days, your suspension will be final.

If you request a hearing under this procedure, a hearing will be set not sooner than five days nor later than thirty days from the date of your request. The procedure for your hearing shall be as prescribed in *Miss. Code Ann.* § 37-9-111. You are entitled to legal representation at this hearing, at your expense.

You may, if you choose, waive your right to a hearing. In that event your suspension without pay will begin immediately.

**EDUCATION IMPROVES ONE'S LIFE'S CHANCES**

JIMMY RAY HUTCHINSON, DIST. 1 - MAXIE BOUTWELL, DIST. 2 - TONY THAMES, DIST. 3 - SCOTT BRYAN, DIST. 4 - WESLEY BRIDGES, DIST. 5