IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


JASON BROOKINS                                                              PLAINTIFF

v.                                    CIVIL ACTION NO. 2:17-CV-60-KS-MTP

LAWRENCE COUNTY SCHOOL
DISTRICT, *et al.*                                                          DEFENDANTS


### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants** Defendants' Motion to Strike

[51] and **grants in part and denies in part** Defendants' Motion for Summary

Judgment [41].

### I. BACKGROUND

This is an employment discrimination case. The Court described its

background in a previous opinion. *See Brookins v. Lawrence County Sch. Dist.*, 2017

WL 4706907, at *1 (S.D. Miss. Oct. 19, 2017). Plaintiff, formerly a teacher in the

Lawrence County School District, permitted four students to use an iPad during class.

The students later alleged that they viewed a pornographic video on the device, and

they believed that the video was of Plaintiff. Defendants – the Lawrence County

School District, Superintendent Tammy Fairburn, and Principal Darryl Turner –

investigated the matter, put Plaintiff on paid administrative leave, and eventually

suspended him for two days. Defendants contend that Plaintiff permitted students to

view obscene materials and intimidated students after he discovered that they were

telling others about the alleged video.

Plaintiff denies the students' allegations and contends that they conspired to falsely accuse him. He further alleges that Defendants committed a series of discriminatory and retaliatory actions against him because he complained about racial discrimination against African-American teachers and students, culminating in his suspension and constructive discharge. He initially asserted claims of racial discrimination and retaliation under Title VII, racial discrimination under 42 U.S.C. §§ 1981 and 1983, First Amendment retaliation, and state-law claims of breach of contract, libel, and slander against the Lawrence County School District, Tammy Fairburn, and Darryl Turner. The Court dismissed Plaintiff's Title VII claims against Turner and Fairburn in the individual capacities. *Id.* at *6. Defendants now seek summary judgment as to Plaintiff's remaining claims.

## II. MOTION TO STRIKE [51]

On January 22, 2019, Defendants filed their Motion for Summary Judgment [41]. Plaintiff responded [46] to the motion on February 19, 2019. Defendants filed a reply [49] on March 8, 2019, completing briefing on the motion. But on March 22, 2019, Plaintiff filed an unauthorized sur-reply [50]. Defendants moved to strike [51] the sur-reply, and Plaintiff has not responded to the Motion to Strike [51].

This Court's local rules do not permit the unauthorized filing of sur-replies. *See* L.U.Civ.R. 7(b). As another District Court in this Circuit has noted: "Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly

disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Larcher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). Moreover, they are "usually not that helpful in resolving pending matters . . . ." *Id.* Accordingly, this Court does not consider sur-replies filed without leave. *See, e.g. Bolton v. Freeze*, 2018 WL 4232231, at *1 (S.D. Miss. June 26, 2018); *Lighthouse Rescue Mission, Inc. v. City of Hattiesburg*, 2014 WL 1653108, at *2 n. 3 (S.D. Miss. Apr. 23, 2014). Therefore, the Court **grants** Defendants' Motion to Strike [51] Plaintiff's unauthorized surreply. The Court will not consider it.

### III. MOTION FOR SUMMARY JUDGMENT [41]

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## A.    Younger *Abstention*

First, Defendants argue that the Court should abstain from adjudicating Plaintiff's claims pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). "In *Younger*, the Supreme Court instructed federal courts that the principles of equity, comity, and federalism in certain circumstances counsel abstention in deference to ongoing state proceedings." *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996). The Court applies a "three-part test describing the circumstances under which abstention is advised: (1) the dispute should involve an ongoing state judicial proceeding; (2) the state must have an important interest in regulating the subject matter of the claim; and (3) there should be an adequate opportunity in the state proceedings to raise constitutional challenges." *Zadeh v. Robinson*, 902 F.3d 483, 496 (5th Cir. 2018).

The *Younger* doctrine "applies to suits for injunctive and declaratory relief."

*Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016). It does not apply, however, to suits seeking money damages. *Alexander v. Ieyoub*, 62 F.3d 709, 713 (5th Cir. 1995). In fact, "a federal district court has no discretion to dismiss cognizable claims for monetary relief which cannot be addressed in a pending state proceeding." *Ballard v. Wilson*, 856 F.2d 1568, 1572 (5th Cir. 1988). However, the Court may, in its discretion, "stay claims for monetary relief that cannot be redressed in the pending state proceeding." *Lewis v. Beddingfield*, 20 F.3d 123, 125 (5th Cir. 1994).

To determine whether *Younger* applies, the Court must look at the specific relief Plaintiff requested. First, Plaintiff seeks a "permanent injunction enjoining Defendant LCSD, its officers, agents, employees, and attorneys and all persons in active concert or participation with it, from engaging in racial discrimination or from discriminating on the basis of race." Complaint at 25, *Brookins v. Lawrence County Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Apr. 27, 2017), ECF No. 1. This is not a request "to enjoin state court proceedings," and, therefore, it falls "outside the scope of *Younger.*" *Allen v. La. Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988); *see also Floyd v. Amite Cnty. Sch. Dist.*, 376 F. Supp. 2d 693, 695 (S.D. Miss. 2005) (request to enjoin future discrimination was not an attempt to enjoin state court and, therefore, not subject to *Younger* abstention).

Next, Plaintiff seeks an injunction requiring that "LCSD institute and carry out policies and practices and programs which provide equal employment opportunities for African Americans and which eradicate the effects of past and

5

present unlawful employment practices, including enforcement of the aforementioned consent decree." Complaint [1], at 25. The consent decree to which Plaintiff refers was entered by this Court. *Id.* at 4-5. Like Plaintiff's first request for injunctive relief, this is not a request "to enjoin state court proceedings." *Allen*, 835 F.2d at 104. Therefore, it falls "outside the scope of *Younger*." *Id.*

The only other claims asserted in Plaintiff's Complaint are for money damages under Title VII and 42 U.S.C. §§ 1983 and 1988, and *Younger* does not apply to claims for money damages. *Alexander*, 62 F.3d at 713.

Defendants cite *Floyd v. Amite County Sch. Dist.*, 376 F. Supp. 2d 693 (S.D. Miss. 2005), in support of their argument that the Court should abstain from adjudicating Plaintiff's claims for injunctive relief. However, in *Floyd*, the plaintiff sought a declaratory judgment "declaring that Defendants violated his rights to nondiscriminatory treatment." *Id.* at 695. While the Court held that the claim for declaratory relief fell within the scope of *Younger*, it specifically held that the plaintiff's claim for an injunction against future discriminatory practices fell outside the scope of *Younger*. *Id.* Having found that it should abstain from addressing Plaintiff's claim for declaratory relief, the Court exercised its discretion to stay the remaining claims for injunctive relief and monetary damages. *Id.* at 697.

Here, Plaintiff asserted no claim for declaratory relief. He seeks a wide variety of monetary damages and two forms of injunctive relief. As noted above, neither request for injunctive relief implicates state court proceedings. Therefore, all of

Plaintiff's claims fall outside the scope of the *Younger* doctrine.

**B.    Rooker-Feldman *Doctrine***

Next, Defendants argue that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress." *Burciaga v. Deutsche Bank Nat'l Trust Co.*, 871 F.3d 380, 384 (5th Cir. 2017). It has four basic elements: "(1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment." *Id.* "[I]n addition to the precise claims presented to the state court, *Rooker-Feldman* prohibits federal court review of claims that are inextricably intertwined with a state court decision." *Id.* at 384-85. Finally, *Rooker-Feldman* only applies to "final judgments by a state's court of last resort." *Id.* at 384.

It is undisputed that Plaintiff's appeal of the administrative officer's decision upholding his suspension is still pending in the Chancery Court. *Rooker-Feldman* only applies to cases seeking review of "final judgments by a state's court of last resort." *Id.* at 384 (citing *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012)); *see also Parker v. Lyons*, 757 F.3d 701, 705-06 (7th Cir. 2014) (citing cases from First, Eighth, Ninth, Tenth, and Eleventh Circuits). Therefore, *Rooker-Feldman* does not apply here.

**C.    *Racial Discrimination (Title VII)***

Defendants argue that any Title VII discrimination claims arising from Plaintiff's suspension and constructive discharge are barred because Plaintiff did not timely exhaust his administrative remedies with respect to those issues. "Before seeking relief in federal court, Title VII plaintiffs must exhaust their administrative remedies." *Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018). "[A] plaintiff first must file a charge with the EEOC within 180 days of the alleged discriminatory act. If and once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to file a Title VII action." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006); *see also* 42 U.S.C. § 2000e-5(e)(1). The 180-day time limit operates like a statute of limitations. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). Therefore, a plaintiff "may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

1. *Suspension*

First, Defendants argue that Plaintiff did not timely submit a charge of discrimination to the EEOC complaining of his suspension. Plaintiff was suspended on October 15, 2015. Therefore, to timely exhaust his administrative remedies with respect to the suspension, he was required to submit a charge of discrimination to the EEOC on or before April 12, 2016. But Plaintiff did not submit a charge of discrimination until April 27, 2016. *See* Exhibit N at 1, *Brookins v. Lawrence County*

*Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Mar. 8, 2019), ECF No. 49-1. Accordingly, Plaintiff's charge was untimely, and any discrimination claim arising from the suspension is barred.

Plaintiff argues that the time to submit a charge was 300 days, rather than 180. The statute provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . , except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier . . . .

42 U.S.C. § 2000e-5(e)(1). Therefore, "[i]n a state that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Mississippi has no such agency, and the 180-day period applies. *See Seals v. Southwire Co.*, No. 1:17-CV-203, 2018 WL 4938820, at *1 (N.D. Miss. Oct. 11, 2018); *Harding v. Huntingdon Ingalls Indus.*, No. 1:15-CV-274-LG-RHW, 2015 WL 6812242, at *2 (S.D. Miss. Nov. 5, 2015).

Plaintiff also claims that he was not aware that he was being suspended

without pay because Defendant "equivocated on whether it would suspend him without pay" when it suspended him in October 2015. Response at 11, *Brookins v. Lawrence County Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 46. Whether the suspension was with or without pay is irrelevant to the issue of exhaustion because it is undisputed that Plaintiff has always believed that the suspension was a discriminatory act. In other words, he believes that he was suspended while a white teacher would not have been suspended – not that he was suspended without pay while a white teacher would have been suspended with pay. Plaintiff stated in his affidavit "Turner and Fairburn suspended me . . . without hearing my version of events and . . . this was not in accordance with my experience or the district's approach based on the circumstances with respect to Caucasian teachers." Exhibit 1 to Response at 4, *Brookins v. Lawrence County Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 46-1. He also alleged in his EEOC charge that three white teachers committed various infractions but were never suspended. Exhibit N [49-1], at 2.

Next, Plaintiff claims that he was unaware of the "racially discriminatory nature of his suspension" until his multi-day administrative hearing, shortly before he filed his charge. Response [46], at 11. Again, Plaintiff's own affidavit contradicts this assertion. He plainly stated that his suspension was out of accordance with Defendants' actions with respect to white teachers. *Id.* at 3-4. He said: "The approach taken . . . was something I never witnessed before with Caucasian teachers who were

subject to rumors." *Id.* at 4. He also alleged that he voiced "intentions to expose the District's discriminatory practices" after he "returned [from suspension] in October 2015." *Id.* These statements belie Plaintiff's argument that he was unaware that Defendants' decisions were allegedly motivated by race.

  2.  *Constructive Discharge*

Defendants also argue that any discrimination claim arising from Plaintiff's alleged constructive discharge is barred because Plaintiff did not timely exhaust his administrative remedies with respect to the issue. Plaintiff alleged that he was constructively discharged on June 30, 2016, when he resigned. Complaint [1], at 11, 14. He filed his EEOC charge two months prior to his alleged resignation, on April 27, 2016, but he never filed an amended charge that includes an allegation that he was constructively discharged. Exhibit N [49-1], at 1.

As noted above, a plaintiff "may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789. Plaintiff obviously did not assert a claim of constructive discharge in his EEOC charge, and no such claim could have reasonably been expected to grow out of the charge because he filed the charge two months before he claims to have resigned. *See Ganheart v. Brown*, 740 F. App'x 386, 391 (5th Cir. 2018); *Hague v. Univ. of Tex. Health Science Ctr. at San Antonio*, 560 F. App'x 328, 331 (5th Cir. 2014); *Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 337-38 (5th Cir. 2014).

Therefore, he did not exhaust his administrative remedies with respect to his constructive discharge claim.

Plaintiff argues that his constructive discharge claim is not time-barred because it is based on the same retaliatory conduct alleged in his EEOC charge. The Court assumes that this is a "continuing violation" argument. The "continuing violation" doctrine "provides that when a plaintiff alleges a hostile work environment claim, as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, the entire time period of the hostile work environment may be considered by a court for the purpose of determining liability." *Heath v. Bd. of Supervisors of S. Univ. and Agric. and Mech. College*, 850 F.3d 731, 736 (5th Cir. 2017). But discrimination "[c]laims alleging discrete acts are not subject to the continuing violation doctrine . . . ." *Id.* at 737. Therefore, the continuing violation doctrine is inapplicable to Plaintiff's discrimination claim arising from his alleged constructive discharge.

### D.   *Hostile Work Environment*

Next, Defendants argue that Plaintiff does not have sufficient evidence to prove that he was subjected to a hostile work environment. To establish a hostile work environment, Plaintiff must prove that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Williams-Boldware v. Denton County, Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019).

"In assessing whether a claim meets that standard, courts review all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or it is a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012). "Incidental or occasional [race]-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment." *Id.*; *see also Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017).

Defendant argues that Plaintiff has not produced evidence of harassing behavior that was based on his race and severe or pervasive enough to affect the terms of his employment. In response, Plaintiff admits that he "will have a hard time" carrying his burden of proof on this claim. Response [46], at 18. But he argues that a jury could reasonably infer that facially neutral incidents were based on his race and severe or pervasive enough to alter the terms of his employment. *Id.* Plaintiff then listed over a dozen different allegations that he believes demonstrate severe or

pervasive harassment on the basis of race. *Id.* at 18-19. However, over the course of two lengthy paragraphs, Plaintiff only generally cited to his own Complaint, his recitation of facts in briefing, and his own affidavit. *Id.* For example, he claims that Defendant "quiets African-American teachers with threats to their livelihood," that his godson was "racially discriminated against with no action being taken," that his wife was "racially discriminated against" and "targeted," that Defendants failed to enforce bullying provisions, and that Defendants failed to provide disciplinary support. *Id.* But Plaintiff did not provide pinpoint citations to the record in support of these claims, and the Court is not obligated to search the record for evidence on Plaintiff's behalf. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir. 1992).

Regardless, many of the examples of alleged harassing conduct cited by Plaintiff are broad, conclusory allegations, rather than specific incidents. For example, Plaintiff claims that "the district failed to enforce a federal consent decree," but he failed to specify how it failed or direct the Court to any evidence on this point. Response [46], at 18. Plaintiff alleged that Defendant discriminated against his wife and godson without elaboration or citation to the record. *Id.* Plaintiff also alleged that Defendants threatened to fire him if he did not remain quiet, and that they alluded to potential criminal charges. But, again, he provided no specific citations to record evidence. *Id.* at 18-19.

In summary, Plaintiff's briefing contains many unsupported allegations and

broad accusations of misconduct, but it contains few citations to specific record evidence. In this regard, it is similar to Plaintiff's testimony at the administrative hearing and his deposition testimony. His allegations of racial harassment and discrimination often relied on his own conclusory and speculative gloss on the facts. Moreover, Plaintiff failed to establish the basis of his personal knowledge of many of the examples he gave of harassing conduct by Defendants. Instead, Plaintiff appeared to be repeating anecdotes from social media or stories that others have told him. Finally, Plaintiff did not establish how Defendants' conduct with respect to *third parties* affected the terms of *his* employment. In the end, Plaintiff has simply failed to direct the Court to specific record evidence that Defendants harassed him because of his race, and that the harassment was severe or pervasive enough to alter the terms of his employment. The Court grants Defendants' motion with respect to Plaintiff's hostile work environment claim.

### E.   *Retaliation (Title VII)*

Defendants argue that Plantiff cannot meet his burden of proof on his claim of retaliation. "Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). The burden-shifting framework from *McDonnell Douglas Corp. v. Green* applies. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Plaintiff has the initial burden to present evidence establishing a *prima facie* case of retaliation. *Id.* at 304. To prove retaliation under Title VII, a

plaintiff must prove that "(1) she engaged in activity protected under Title VII, (2) an adverse employment action occurred, and (3) there was a causal connection between her protected activity and the adverse employment decision." *Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 327-28 (5th Cir. 2019).

If Plaintiff presents evidence establishing a *prima facie* case of retaliation, "discrimination is presumed," and the burden shifts to the District to articulate a legitimate, nondiscriminatory reason for its actions. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

If the District can articulate a legitimate, nondiscriminatory reason for the underlying employment action, the presumption of discrimination disappears, and Plaintiff "must then offer sufficient evidence to create a genuine issue of material fact either (1) that [Defendant's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Defendant's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Plaintiff's] protected characteristic (mixed-motives alternative)." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

1.   *Protected Activity*

First, Defendant argues that Plaintiff can not make out a *prima facie* case of retaliation because he can not prove that he engaged in any protected activity. In this

16

context, "protected activity" is "oppos[ing] any practice made an unlawful employment practice" by Title VII or "ma[king] a charge, testif[ying], assist[ing] or participat[ing] in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The first option "is known as the 'opposition clause;' the second as the 'participation clause.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016).

In his affidavit, Plaintiff stated: "On or about September 2015, I complained to Principal Turner that I noticed Fairburn about the racially discriminatory practices of the LCSD. I informed [him] that the District's hiring practices were racially discriminatory, [that] they failed to follow the federal consent decree, as well as my concern about the well-being of my African-American godson due to the District's racial discrimination." Exhibit 1 [46-1], at 2.[1] It is undisputed that Defendants suspended Plaintiff in October 2015, shortly after his alleged complaint to Principal Turner. Therefore, this affidavit testimony creates a genuine dispute of material fact as to whether Plaintiff "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a).

### 2.   *Causation*

Next, Defendant argues that Plaintiff can not prove a causal connection

---

[1] Plaintiff also provided several pages of testimony in his administrative hearing regarding his past complaints about perceived discrimination in the District. *See* Exhibit 6 to Response at 22-29, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 46-6. Plaintiff did not provide any specific dates, but these complaints apparently occurred well before the school year beginning in the fall of 2015.

between any protected activity and his suspension or alleged constructive discharge. "To establish the requisite causal connection between the protected activity and the adverse employment action, a plaintiff must show that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017). In other words, the plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). "[T]emporal proximity alone is insufficient to prove but-for causation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). "But the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)).

First, Plaintiff presented evidence of temporal proximity. He allegedly complained to Defendants about discriminatory employment practices in September 2015. Exhibit 1 to Response [46-1], at 2. It is undisputed that he was suspended shortly thereafter, in mid-October.

In addition to the undisputed temporal proximity of events, Plaintiff presented other evidence that, when construed in his favor, supports the conclusion that Defendants' purported reasons for disciplining him were pretext for retaliation. First, Plaintiff testified that the students who accused him of providing them with obscene

18

materials had a history of disciplinary problems, but that Defendants ignored the students' past behavioral issues when assessing their credibility. *Id.* at 3; Exhibit 5 to Response at 17-18, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 46-5. In fact, Plaintiff testified that the students told him: "No, there wasn't nothing on there;" "I definitely didn't say that;" and "You know we be playing. We just joking." Exhibit B to Motion for Summary Judgment at 19, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Jan. 22, 2019), ECF No. 41-2; *see also* Exhibit 5 [46-5], at 22.

Additionally, the sequence of events could reasonably be interpreted as evidence of pretext. According to Defendants, they interviewed the students on October 2, 2015, and October 5, 2015. Memorandum in Support of Motion for Summary Judgment at 4-5, *Brookins v. Lawrence County Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Jan. 22, 2019), ECF No. 42. On or around October 6, 2015, Turner summoned Plaintiff to his office to discuss the accusations. Exhibit B [41-2], at 21; Exhibit D to Motion for Summary Judgment, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Jan. 22, 2019), ECF No. 41-4. According to Plaintiff, Cedric Collins, the Assistant Principal, and Twyla Oakes, the Personnel Director, were present. Exhibit B [41-2], at 21. Oakes told Plaintiff about the accusations against him, and they told him that he was going to be placed on paid administrative leave while the District investigated the charges. *Id.*; *see also* Exhibit D [41-4].

19

On October 14, 2015, while Plaintiff was still on administrative leave, Defendants summoned him to the District office. Exhibit B [41-2], at 26; Exhibit E to Motion for Summary Judgment, *Brookins v. Lawrence County Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Jan. 22, 2019), ECF No. 41-5. Defendants gave Plaintiff a letter from Fairburn informing him that he was suspended for two days for violation of certain District standards. Exhibit E [41-5]. However, it does not appear that Defendants conducted any additional investigation during the time Plaintiff was on administrative leave.

This sequence of events, when construed in the light most favorable to Plaintiff, could reasonably support a conclusion that Defendants had already made the decision to suspend Plaintiff when they met with him on October 6, and that they used the time he was on administrative leave to craft a *post hoc* justification for the conclusion. In the end, the District's conclusion was based solely on the statements of the students involved in the incident, which Defendants had received before the administrative leave period. Defendants did not attempt to corroborate the students' testimony by talking to other students, and they performed only a cursory examination of the iPad itself. Moreover, Defendants decided to place Plaintiff on administrative leave before hearing his version of events.

Likewise, the official charges themselves support an inference of pretext, in that they do not match the alleged offense. For example, Defendants charged Plaintiff with violating the District's Internet Acceptable Use Policy. *Id.* But the students

alleged that they viewed the pornographic video in the iPad's deleted photos, rather than on the internet, and multiple parties testified at the Plaintiff's administrative hearing that the School's wi-fi network had internet filters and other impediments to accessing obscene materials. In fact, Defendant Fairburn admitted at Plaintiff's administrative hearing that this charge was meritless. Exhibit 9 to Response at 4, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 46-9.

Defendants also charged Plaintiff with failing to properly supervise students during the school day. Exhibit E [41-5]. According to Defendants, the basis of this charge is that Plaintiff questioned the accusing students separate from the class, leaving his class unattended for several minutes. Exhibit 3 to Response at 17-19, 44, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 46-3. However, Plaintiff testified that teachers were permitted to use student monitors briefly while they addressed disciplinary concerns. Exhibit 1 [46-1], at 3. He also testified that he questioned the students separate from the class in accordance with District guidelines to avoid embarrassment of students. *Id*. Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that the charge of failing to supervise students was specious.

Finally, Plaintiff testified that Turner said he did not intend to inform the students' parents about the iPad incident. Exhibit 5 [46-5], at 56-57. In light of the serious nature of the students' accusations, Turner's purported failure to inform their

parents casts doubt on his credibility.

In summary, the temporal proximity of Plaintiff's protected activity and his suspension and the other evidence of pretext are sufficient to create a genuine dispute of material fact as to whether Plaintiff's protected activity caused the adverse employment action. *Solvay Pharms.*, 871 F.3d at 334.

    *3.    Pretext*

Defendants produced a legitimate, nondiscriminatory reason for suspending Plaintiff: students alleged that they viewed a pornographic video on an iPad Plaintiff provided them, and Plaintiff later left his class unattended to question the students about the incident without an administrator present. Therefore, Plaintiff must "offer sufficient evidence to create a genuine issue of material fact either (1) that [Defendants'] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Defendants'] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Plaintiff's] protected characteristic (mixed-motives alternative)." *Vaughn*, 665 F.3d at 636.

In its causation analysis, the Court listed several examples of evidence that, when construed in the light most favorable to Plaintiff, would support a jury's conclusion that the District's purported reason for suspending Plaintiff was pretext for discrimination. Therefore, the Court denies Defendants' motion with respect to Plaintiff's Title VII retaliation claim.

**F.    Racial Discrimination (§ 1981)**

Defendants argue that Plaintiff does not have sufficient evidence to support his claim of racial discrimination in violation of 42 U.S.C. § 1981. Suits for violation of § 1981 are brought under § 1983 because § 1981 does not provide an independent cause of action. *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 463 (5th Cir. 2001). "The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims," using the same burden-shifting framework in cases where there is no direct evidence of discrimination. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017); *see also Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018). "To establish a *prima facie* case, [Plaintiff] must provide evidence that [he] (1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that others similarly situated were treated more favorably." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

1.   *Property Interest*

First, Defendants argue that being placed on administrative leave with pay does not constitute a deprivation of a property interest, citing *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 495 (5th Cir. 2011). In *Davis*, the Fifth Circuit held that a plaintiff's due process claim failed because she "had no property interest in her contract after its . . . expiration." *Id.* The Court also held that being placed on paid administrative leave did not constitute a property deprivation for purposes of a due

process claim. *Id.* Plaintiff did not assert a due process claim, and this argument is irrelevant. Regardless, it appears to be undisputed that Plaintiff had to take personal leave days for his administrative appeal of the suspension. *See, e.g.* Exhibit 9 [46-9], at 3.

  2.   *Interference with Contract*

  Defendants also argue that being placed on administrative leave with pay did not interfere with Plaintiff's contract. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Putting Plaintiff on administrative leave prevented him from performing his duties under the employment contract and enjoying the privileges of his position as a teacher. Plaintiff also testified that the investigation and suspension damaged his credibility and undermined his ability to control his classroom, further impacting the performance of his duties under the contract. Therefore, Defendants' alleged actions fall within the scope of relevant conduct under § 1981.

  3.   *Because of Race*

  Next, Defendants argue that Plaintiff can not prove that they intended to discriminate against him because of his race. As noted above, "Section 1983 and Title

VII are parallel causes of action." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007). "Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Id.* Once Plaintiff has presented evidence to make out a *prima facie* case of discrimination, it creates a presumption of discriminatory intent. *Davis*, 383 F.3d at 317.[2]

The first two elements – that Plaintiff is a member of a protected class, and that he was qualified for his position – are undisputed. For the reasons cited above, the Court finds that Plaintiff presented sufficient evidence to create a genuine dispute of material fact as to the third element – an adverse employment action.

As for the fourth element, Plaintiff argues that white teachers who committed similar or worse offenses were not suspended. Most of Plaintiff's testimony on this point is vague and unquestionably hearsay. However, Cedric Collins, an assistant principal at the school, testified that a white teacher, Candice Sandifer, directed profane and abusive language at a student in the classroom and showed her class a television show containing sexual content. *See* Exhibit 8 to Response, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Feb, 19, 2019), ECF No. 46-8. Collins also testified that the principal, Mr. Turner, knew that Sandifer had

---

[2] There is significant divergence between the parties' briefs on this claim. Defendants apparently believed that Plaintiff's § 1981 claim was for impairment of Plaintiff's right to contract, or contractual discrimination. However, Plaintiff's briefing indicates that he intended to bring a traditional employment discrimination claim under §§ 1981 and 1983. The Fifth Circuit's case law clearly permits such claims to be presented via §§ 1981 and 1983, rather than or in addition to Title VII.

shown the television show to her class, and that parents had complained, but the school had not taken any disciplinary action. *Id*. This is sufficient to carry Plaintiff's initial burden and create a presumption of discriminatory intent.

### 4. *Qualified Immunity*

Defendants argue that the individual Defendants, Fairburn and Turner, are entitled to qualified immunity from liability against Plaintiff's § 1981 claim. The Court follows a two-step analysis when evaluating a qualified immunity defense. "First, we must determine whether the plaintiff has made a sufficient showing that the official violated a clearly established constitutional or statutory right. If the answer is in the affirmative, we then ask whether the official's actions were objectively reasonable in light of the clearly established right." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003).

First, Defendants contend that Plaintiff can not prove a violation of a constitutional or statutory right because there is no evidence that Turner or Fairburn harbored discriminatory intent. As noted above, "Section 1983 and Title VII are parallel causes of action," and "the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale*, 512 F.3d at 166. Plaintiff presented sufficient evidence to make out a *prima facie* case of discrimination, creating a presumption of discriminatory intent. *Davis*, 383 F.3d at 317. Turner's own testimony at Plaintiff's administrative hearing demonstrates his personal involvement in the investigation

and disciplinary process. Likewise, Defendant Fairburn signed the letter informing Plaintiff of his suspension and the purported reasons for it. Exhibit E [41-5], at 1-2. Moreover, her testimony at the administrative hearing demonstrates her personal involvement in the investigation and disciplinary process.

Next, Defendants argue that their actions were objectively reasonable because of the allegations against Plaintiff and their investigation. Viewing the facts in the light most favorable to Plaintiff, the Court can not conclude that Defendants' actions were objectively reasonable under the circumstances. The Court noted evidence above that could reasonably support a conclusion that Defendants' purported reasons for their actions were pretext for discrimination. Additionally, Plaintiff presented evidence of a similarly situated white teacher who was treated differently than him. Accordingly, Plaintiff presented sufficient evidence to create a genuine dispute of material fact as to his claim of racial discrimination, and racial discrimination is never objectively reasonable. *Cf. Piatt v. City of Austin*, 378 F. App'x 466, 469 (5th Cir. 2010); *Blackwell v. Laque*, 275 F. App'x 363, 367-68 (5th Cir. 2008); *Charupatanapong v. Univ. of Houston*, 37 F. App'x 91, at *3 (5th Cir. 2002).

### 5.   *Policy, Practice, or Custom*

Finally, Defendants argue that the District can not be liable for Plaintiff's § 1981 claim because Plaintiff has no evidence that the alleged discrimination was the result of a District policy, practice, or custom. Plaintiff argues that the District ratified the individual Defendants' actions, and that it delegated policy-making

authority in personnel matters to Defendant Fairburn, the superintendent.

### a. Ratification

If an authorized policymaking body approves "a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009). But Fifth Circuit "precedent has limited the theory of ratification to 'extreme factual situations.'" *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). Without evidence that the policymaking body knew of and ratified the subordinate's improper motive, the actions in dispute must be so egregious that a policymaking body could not approve them without also approving the unconstitutional nature of the actions. *Cf. Coons v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (subordinates' illegal behavior is not assumed to have resulted from official policy where a policymaker defends his subordinates). The facts here do not present the sort of "extreme factual situation" in which the Fifth Circuit has applied the theory of ratification.[3]

### b. Delegation/Single-Incident Exception

As for Plaintiff's delegation argument, claims for violations of § 1981 are brought through § 1983. *Oden*, 246 F.3d at 463. The Fifth Circuit has provided the

---

[3] *See Peterson*, 588 F.3d at (ratification did not apply where officers used excessive force by slamming arrestee against truck, kneeing him in the thigh); *Snyder*, 142 F.3d at 798 (ratification didn't apply where officer shot a fleeing suspect in the back); *Coons*, 780 F.2d at 1161 (ratification did not apply to officer-involved shooting where officers' actions were not "manifestly indefensible"); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (ratification applied when officers "poured" gunfire onto a truck, killing an innocent person).

following summary of the law concerning municipal liability under § 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.
>
> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.
>
> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.
>
> A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and citations omitted).

"When a municipality's final policy and decision maker in a single action directly and intentionally deprives a person of a federal constitutional right, . . . the person need not show that a policy or custom caused his injury in order to recover. In

such a case, the municipality's action is deemed to be the direct cause or moving force behind the deprivation of right and injury." *Coggin v. Longview Indep. Sch. Dist.*, 289 F.3d 326, 333 (5th Cir. 2002) (citing *Bd. of County Comm'ners v. Brown*, 520 U.S. 397, 402-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "To prove liability under the single-incident exception, a plaintiff must at least show (1) that the defendant acted with deliberate indifference by disregarding a known or obvious consequence of his action and (2) that there is a direct causal link between the defendant's action and the deprivation of federal rights." *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008). Therefore, a single action by one who establishes governmental policy is sufficient to impose municipal liability in certain circumstances. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1997)). Moreover, a municipal body can delegate its policymaking authority to a public official, whose actions can then expose the municipality to liability. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995); *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 377 (5th Cir. 2017).

But "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001). "[D]iscretion alone is not enough; the official must also create

30

policy." *Id.* The determination of whether an official possesses final policymaking authority is a matter of state law. *Id.* The Court should consider whether state law grants final policymaking authority to the public official, and whether his authority is reviewable by any other public body. *Id.* at 602-03.

Mississippi law provides: "For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any licensed employee in any school district." MISS. CODE ANN. § 37-9-59. The superintendent likewise has discretion to bar the offending employee from campus. *Id.* But the superintendent's decision can be appealed to the school board. *Id.* Like in *Beattie*, the individual Defendants presented their recommendation to the school board, and the school board approved their decision to suspend Plaintiff. *Id.* at 603.

Because Defendants Fairburn and Turner did not have final policymaking authority with respect to their decision to suspend Plaintiff, the single-incident exception does not apply. Accordingly, Plaintiff failed to present any evidence that the violation of § 1981 was the result of a District policy, practice, or custom, and the Court grants Defendants' motion as to that claim against the District.

## G.   *Racial Discrimination (§ 1983)*

Next, Defendants argue that Plaintiff does not have sufficient evidence to maintain his claims of racial discrimination under § 1983. "Section 1983 and Title VII are parallel causes of action." *Lauderdale*, 512 F.3d at 166. "[W]hen Section 1983 is

31

used as a parallel remedy with Title VII in a racial discrimination suit the elements of a cause of action are the same under both statutes." *Lee v. Conecuh Cnty. Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. 1981). The Court applies the *McDonnell Douglas* burden-shifting framework. *Id.* "To establish a *prima facie* case, [Plaintiff] must provide evidence that [he] (1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that others similarly situated were treated more favorably." *Outley*, 840 F.3d at 216.

    *1.   Suspension*

First, Defendants argue that Plaintiff cannot maintain a racial discrimination claim arising from his suspension because a suspension is not an adverse employment decision in this context. It is undisputed that Defendants put Plaintiff on paid administrative leave from October 6, 2015, through October 14, 2015, pending investigation of the iPad incident and his actions. Then they suspended him for two days. Although Fairburn's letter indicated that Plaintiff would be suspended without pay, the District apparently reconsidered and paid Plaintiff during the suspension. Exhibit E [41-5], at 1; Exhibit 1 [46-1], at 4. Plaintiff believes that Defendants charged him with personal leave days for his administrative appeal hearing. Exhibit 1 [46-1], at 4. However, Plaintiff's belief is based on Defendant Fairburn's "indication" that she would charge him with personal leave days, and he has not presented any evidence demonstrating that she actually did so. *Id.*

An adverse employment decision "affects the terms and conditions of employment." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014). It consists of "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id.* Therefore, the Fifth Circuit has held that placing an employee on paid leave is not an adverse employment decision in the context of a discrimination claim. *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007).

The Court grants Defendants' motion with respect to Plaintiff's § 1983 discrimination claim arising from Plaintiff's paid administrative leave and suspension. Fifth Circuit precedent is clear that paid administrative leave and suspension with pay are not adverse employment decisions in the context of a § 1983 discrimination claim.

### 2. *Constructive Discharge*

Next, Defendants argue that Plaintiff provided no competent evidence to support a claim of constructive discharge. "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Id.* at 557. The Fifth Circuit has identified six factors to aid the Court's inquiry: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's

33

resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not." *Id.* The Court employs "an objective, reasonable employee test under which we ask whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Id.* (punctuation omitted).

The Court need not address the factors listed above. It is undisputed that Plaintiff completed the term of his employment contract. He did not resign. Therefore, there was no constructive discharge.

Because Plaintiff can not establish an adverse employment action within the context of a racial discrimination claim under § 1983, the Court grants Defendants' motion with respect to such claims.

## H.    *First Amendment Retaliation*

Next, Defendant argues that Plaintiff does not have sufficient evidence to prove the elements of a First Amendment retaliation claim. "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017). To prove a claim of retaliation in violation of the First Amendment, Plaintiff must show that "(1) [he] suffered an adverse employment decision; (2) [his] speech involved a matter of public concern; (3) [his] interest in commenting on matters of public concern . . . outweigh[s] the defendant's interest in promoting efficiency; and (4) [his] speech motivated the adverse employment decision." *Dearman v. Stone County Sch. Dist.*, 832 F.3d 577,

580-81 (5th Cir. 2016).

"[S]peech made pursuant to a public employee's official duties" is not protected by the First Amendment. *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 419, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)). But "a public employee does not speak pursuant to his official duties merely because he speaks while *at* work. Likewise, a public employee does not speak pursuant to his official duties merely because he speaks *about* work." *Id.* Rather, "[t]he First Amendment protects some expressions related to the speaker's job," *Garcetti*, 547 U.S. at 421, and "a public employee does not speak pursuant to his official duties when his speech is analogous to that of a citizen's speech." *Anderson*, 845 F.3d at 594.

1.    *Adverse Employment Action*

First, Defendants argue that Plaintiff can not prove that he suffered an adverse employment action. Defendants argue that Plaintiff's suspension with pay "was, at worst, a reprimand but should not be considered an adverse employment action." Memorandum Brief [42], at 33. However, in the context of a First Amendment retaliation claim, adverse employment actions "can include discharges, demotions, refusals to hire, refusals to promote, and *reprimands*." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) (emphasis added); *see also Hypolite v. City of Houston, Tex.*, 493 F. App'x 597, 607 (5th Cir. 2012) ("A reprimand . . . is an adverse employment action.").[4] Plaintiff presented evidence that Defendants "formally

---

[4] *But see Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009); *Breaux v. City of Garland*, 205 F.3d 150, 164 (5th Cir. 2000) (suspension with pay was not an adverse employment

reprimanded" him and charged him with several violations of District policy. Exhibit 1 [46-1], at 3-4. He also testified that Defendants put him on an "improvement plan" to address his alleged behavior, and that a subsequent employer mentioned the charges against him. Construed in the light most favorable to Plaintiff, this evidence is sufficient to meet the requirement of an adverse employment action.

### 2. *Protected Speech*

Next, Defendants argue that Plaintiff can not prove that he engaged in any protected speech. The Court rejects this argument for the same reasons provided in its discussion of Plaintiff's Title VII retaliation claim.

### 3. *Causation*

Next, Defendants argue that Plaintiff can not prove that his speech motivated the adverse employment action. To establish causation, Plaintiff must show that his protected speech was "a motivating factor" for the adverse employment actions. *Dearman*, 832 F.3d at 581. For the same reasons provided in the discussion of Plaintiff's Title VII retaliation claim, the Court finds that Plaintiff presented sufficient evidence to create a genuine dispute of material fact as to whether his protected speech was a motivating factor for the adverse employment actions at issue.

### 4. *Qualified Immunity*

Defendants Fairburn and Turner argue that they are entitled to qualified immunity from individual liability for Plaintiff's First Amendment retaliation claim.

---

action for purposes of First Amendment retaliation claim); *Brown v. City of Saltillo, Miss.*, 106 F. Supp. 3d 784, 789-90 (N.D. Miss. 2015).

Defendants argue that they were not the final decision-makers with respect to the disciplinary actions against Plaintiff, and that Fifth Circuit precedent finding that non-policymakers could be liable for retaliation was not clearly established at the time of the events in question.

"[I]ndividual liability for a government official who violates constitutional rights, including First Amendment ones, turns on traditional tort principles of 'but-for' causation." *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018). "If an individual defendant's animus against a co-worker's exercise of First Amendment rights is a link in the causal chain that leads to" an adverse employment decision, "the individual may be liable even if she is not the final decisionmaker." *Id.* However, the Fifth Circuit found that this principle was not "clearly established" until June 28, 2018. *Id* at 641.[5] Therefore, individual defendants who were not the final policy or decision maker with respect to an adverse employment action taken in retaliation to a plaintiff's exercise of First Amendment rights can not be personally liable unless the alleged violation occurred after June 28, 2018.

As noted above in the Court's analysis of Plaintiff's § 1981 racial discrimination

---

5 The undersigned judge respectfully disagrees with the *Sims* panel's judgment. "Qualified immunity shelters state officials from liability only to the extent that the officials' actions do not violate clearly established statutory or constitutional rights." *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016). In other words, the Court must determine whether the "defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Id.* The "clearly established" part of the analysis refers to the statutory or constitutional right at issue – not the causation standard to be applied by a court if a suit is eventually filed. Under *Sims*, public officials may violate clearly established constitutional rights without threat of redress if causation standard applied to the particular cause of action is not clearly established at the time of the constitutional violation. This seems contrary to the purpose and spirit of the doctrine of qualified immunity.

claim, neither Defendant Fairburn nor Defendant Turner were final policy makers with respect to the subject adverse employment actions. Under Mississippi law, they possessed discretionary authority, but it was subject to the School Board's final policy-making authority. *See* MISS. CODE ANN. § 37-9-59; *Beattie*, 254 F.3d at 602-03. Therefore, the law imposing liability on them for the alleged violation of Plaintiff's First Amendment rights was not clearly established at the time of the events in question, and they are entitled to qualified immunity from liability.

5. *Official Policy or Custom*

Finally, Defendants argue that the District can not be liable because Plaintiff has no evidence that the alleged violation of Plaintiff's First Amendment rights was caused by an official policy, practice, or custom. For the same reasons provided in the Court's discussion of Plaintiff's discrimination claim under § 1981, the Court finds that Plaintiff failed to present any evidence that the alleged violation of Plaintiff's First Amendment rights was the result of a District policy, practice, or custom, and the Court grants Defendants' motion as to that claim against the District.

## I. *Breach of Contract*

Defendants argue that Plaintiff has not presented any evidence that the District breached its employment contract with Plaintiff or that he suffered any damages because of the alleged breach. In response, Plaintiff argues that his constructive discharge violated his employment contract, and that he was bullied and discriminated against in violation of his contract.

38

"Under Mississippi law, a plaintiff asserting any breach-of-contract claim has the burden of proving by a preponderance of the evidence (1) that a valid and binding contract exists; and (2) that the defendant has broken or breached it without regard to the remedy sought or the actual damage sustained." *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 527 (Miss. 2019). "Monetary damages are a remedy for, not an element of breach of contract." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012). Under Mississippi law, "employee manuals become part of the employment contract, creating contract rights to which employers may be held . . . ." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 345 (5th Cir. 2006), *overruled on different grounds by Sims*, 894 F.3d at 640-41.

1.   *Equal Opportunity Clause*

First, Plaintiff argues that there is a genuine dispute of material fact as to whether the District violated the equal opportunity policy in its employee handbook. The relevant section provides: "This Board shall not discriminate in its policies and practices with respect to compensation, terms or conditions of employment because of an individual's race . . . ." Exhibit L to Motion for Summary Judgment at 8, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Jan. 22, 2019), ECF No, 41-12. Therefore, the handbook does not appear to limit breaches of the equal opportunity clause in the same manner that § 1983 claims for racial discrimination are limited to "ultimate employment decisions." *Thompson*, 764 F.3d at 503. For the reasons provided in the Court's discussion of Plaintiff's § 1981

discrimination claim, the Court finds that a genuine dispute of material fact exists as to whether the District breached this provision of Defendant's employment contract.

2.      *Bullying*

Plaintiff also argues that there is a genuine dispute of material fact as to whether the District violated its own bullying policy. The policy provides, in relevant part:

> The Lawrence County School District does not condone and will not tolerate bullying or harassing behavior. Bullying or harassing behavior is any pattern of gestures or written, electronic or verbal communications, or any physical act or any threatening communication, or any act reasonably perceived as being motivated by any actual or perceived differentiating characteristic that (a) places a student or school employee in actual and reasonable fear of harm to his or her person or damage to his or her property, or (b) creates or is certain to create a hostile environment by substantially interfering with or impairing a student's educational performance, opportunities or benefits. A "hostile environment" means that the victim subjectively views the conduct as bullying or harassing behavior and the conduct is objectively severe or pervasive enough that a reasonable person would agree that it is bullying or harassing behavior.

> **\* \* \***

> The Lawrence County School District will make every reasonable effort to ensure that no student or school employee is subjected to bullying or harassing behavior by other school employees or students.

Exhibit M to Motion for Summary Judgment at 6, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. Jan. 22, 2019), ECF No. 41-13. Therefore, the policy forbids 1) bullying or harassing behavior that "places . . . a school employee in actual and reasonable fear of harm to his or her person or damage to his or her property," and 2) bullying or harassing behavior that "creates . . . a hostile

environment by substantially interfering with or impairing a student's education performance, opportunities or benefits." *Id.* It also provides that the District will make "every reasonable effort to ensure that no . . . school employee is subjected to bullying or harassing behavior by other school employees or students." *Id.*

The second option – creation of a hostile environment that impairs a student's educational performance and opportunities – is not applicable here because Plaintiff was not a student. Regardless, for the same reasons provided in the Court's discussion of Plaintiff's Title VII hostile work environment claim, the Court finds that Plaintiff did not provide sufficient evidence to create a genuine dispute of material fact as to the existence of a hostile environment.

Likewise, Plaintiff has not provided sufficient evidence to demonstrate that he was actually and reasonably in fear of damage to his person or property. In briefing this issue, Plaintiff did not specify the events or actions that qualified as "bullying" under the District's policy, and the Court declines to search the record and guess. Regardless, nothing in the record comes close to meeting this standard.

For these reasons, the Court grants Defendants' motion as to Plaintiff's breach of contract claim arising from the District's bullying policy.

3.    *Constructive Discharge*

Finally, Plaintiff argues that his constructive discharge breached the terms of his employment contract. But Plaintiff was not constructively discharged. It is undisputed that he did not resign. Rather, he completed the term of his employment

41

contract.

### J.    *Constructive Discharge*

Defendants argue that Plaintiff can not establish a claim of constructive discharge under state law. Under Mississippi law, a constructive discharge "may be deemed to have resulted when the employer made conditions so intolerable that the employee reasonably felt compelled to resign." *Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1246 (Miss. 2000). As noted above, it is undisputed that Plaintiff did not resign. He completed the full term of his employment contract. Therefore, he was not constructively discharged.

### K.    *Defamation*

Finally, Defendants argue that summary judgment is appropriate as to Plaintiffs' claims of libel and slander.

#### 1.    *MTCA*

First, Defendants argue that the District can not be liable for libel or slander pursuant to the Mississippi Tort Claims Act ("MTCA"). Plaintiff did not respond to this argument.

The MTCA waived the City's sovereign immunity "from claims for money damages arising out of torts of . . . governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ." MISS. CODE ANN. § 11-46-5(1). However, "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not

be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than a traffic violation." MISS. CODE ANN. § 11-46-5(2). Therefore, the District has not waived its sovereign immunity from liability for Plaintiff's claims of libel and slander. The Court grants Defendants' motion as to those claims against the District.

2.    *Libel*

Next, Defendants Fairburn and Turner argue that Plaintiff does not have sufficient evidence to create a genuine dispute of material fact as to the elements of libel. Under Mississippi law, a defamation claim requires the plaintiff to prove: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Inland Family Practice Ctr., LLC v. Amerson*, 256 So. 3d 586, 590 (Miss. 2018). Libel is "written or visual defamation," while slander is "oral or aural defamation." *Condere Corp. v. Moon*, 880 So. 2d 1038, 1043 n. 2 (Miss. 2004).

Defendants argue that Plaintiff has no competent evidence that they made any false or defamatory statement to a third party. In response, Plaintiff argues that a jury could reasonably conclude that Defendant Fairburn falsely alleged in writing that Plaintiff showed obscene materials to minors, failed to supervise minors, and

43

intimidated minors. Plaintiff did not specify the writing, but the Court assumes that Plaintiff refers to the letter of October 14, 2015. Exhibit E [41-5]. The letter was addressed to Plaintiff, and Plaintiff testified that Fairburn gave him the letter. Plaintiff has not directed the Court to any evidence that Fairburn published the letter to a third party, and the Court declines to search the record on Plaintiff's behalf. Accordingly, summary judgment is appropriate as to Plaintiff's libel claim against Fairburn.

Plaintiff did not respond to Defendants' argument that he has no evidence to support a libel claim against Turner. Therefore, as Plaintiff failed to direct the Court to any evidence creating a genuine issue of material fact with respect to the libel claim against Turner, the Court grants Defendants' motion as to that claim. Likewise, Plaintiff did not direct the Court to any evidence creating a genuine dispute of material fact as to his slander claims against Turner and Fairburn, and the Court also grants Defendants' motion as to those claims.

## IV. CONCLUSION

For these reasons, the Court **grants** Defendants' Motion to Strike [51] and **grants in part and denies in part** Defendants' Motion for Summary Judgment [41]. Specifically, the Court grants the Motion for Summary Judgment [41] as to the following claims:

- Plaintiff's Title VII racial discrimination claims;

- Plaintiff's Title VII hostile work environment claim;

44

- Plaintiff's § 1981 claim for racial discrimination against the District;

- Plaintiff's § 1983 claims for racial discrimination;

- Plaintiff's First Amendment retaliation claims;

- Plaintiff's state-law breach of contract claims arising from the District's bullying policy and alleged constructive discharge;

- Plaintiff's state-law claim of constructive discharge; and

- Plaintiff's state-law claims of libel and slander.

The Court denies the motion in all other respects.

SO ORDERED AND ADJUDGED this 13th day of May, 2019.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE